Staunton.

FIRST NATIONAL BANK OF HARRISONBURG v. PAUL AND ALS.

Absent, *Moncure*, P.

1. Parol evidence is inadmissable to show that the privy examination of a married woman has been regularly taken in the form prescribed by the statute ; or, that the officer taking the same, has, through accident, inadvertence or mistake, omitted some of the material statements required to be set forth in the certificate of privy examination.

2. Where, as in this case, it does not appear from the certificate of the officer that the privy examination of the married woman was taken as required by the statute, she is entitled, on the death of her husband, to recover her dower in the real estate conveyed by the deed ; or, under the circumstances of this case, its commuted value in money.

This is an appeal from a decree rendered by the circuit court of Rockingham county in a chancery cause pending therein, in which Mary Jane Paul was complainant, and the First National Bank of Harrisonburg and others were defendants.

By deed dated July 1, 1865, A. M. Newman and wife conveyed to Isaac Paul a tract of land near Harrisonburg, Va., containing about 308 acres, retaining a lien to secure a part of the purchase money, evidenced by the bond of said Paul for $7,837.50. This deed was admitted to record in the clerk's office of Rockingham county court on December 14, 1865. On January 19, 1869, a portion of said land, consisting of about 249 acres, was sold and conveyed to William I. and Robert C. Paul, who were the sons of Isaac Paul, in consideration of $18,000, of which the sum of $8,000 was to be paid on January 19, 1874, the sum of $8,000 on Janu-

ary 19, 1875, and the sum of $2,000 on July 19, 1875—said sums bearing interest, payable annually, and for which William I. and Robert C. Paul gave their bonds to Isaac Paul, a lien therefor being retained in the deed on the property conveyed. The deed commences as follows:

"This deed, made this 19th day of Jan'y, in the year 1869, between Isaac Paul and Mary Jane, his wife, of the first part"; and it concludes as follows: "Witness the following signatures and seals.

"Isaac Paul. [Seal.]
"Mary Jane Paul. [Seal.]"

The certificate of acknowledgment is in the following words and figures—to-wit:

"State of Virginia—
Rockingham county—to-wit:

"We, justices of the peace for the county aforesaid, in the State of Virginia, do certify that Mary Jane Paul, the wife of Isaac Paul, whose names are signed to the writing hereto annexed, bearing date on the 19th day of January, 1869, personally appeared before us, in the county aforesaid, and being examined by us privily and apart from her husband, and having the writing aforesaid fully explained to her, she, the said Mary Jane Paul, acknowledged the said writing to be her act, and declared that she had willingly executed the same, and does not wish to retract it.

"Given under our hands, this ——— day of January, Anno Domini 1869.

"Clerk's office, county court of Rockingham, Jan'y 19th, 1869:

"This deed from Isaac Paul and Mary Jane, his wife, to William I. Paul and Robert C. Paul, was this day

presented and acknowledged in the office aforesaid, by the said Isaac Paul and wife (she being also privily examined before me, clerk of said court), and admitted to record.

"Teste :

"R. A. GRAY, C. R. C."

The lien for $7,837.50, evidenced by the bond of Isaac Paul, retained in the deed of Newman and wife to him, was subsequently satisfied, in the lifetime of Isaac Paul, by a sale to Mrs. Emma E. Effinger of the Mansion House and a part of the original Newman tract of 308 acres other than the 249 acres conveyed as aforesaid to his sons. Wm. I. and Robt. C. Paul, by their deed of May 5, 1870, conveyed to William Walsche and John Kenney, Jr., a part of said 249 acres, consisting of five acres, who afterwards by their deed of December 1, 1874, conveyed said five acres to the First National Bank of Harrisonburg. The bonds of Wm. I. and Robt. C. Paul to Isaac Paul having been transferred by the latter to said bank, and the obligors having failed to pay the interest thereon, the bank instituted a chancery suit in the county court of Rockingham in the name of Isaac Paul for the use of said bank against the obligors to sell the said land in order to satisfy said bonds, and in the progress of this cause 244 acres of the said land were purchased at a commissioner's sale by the said bank, and a deed therefor executed and delivered by a commissioner of said court under its decree.

Isaac Paul died on October 28, 1879, leaving Mary Jane Paul his widow, then in her 61st year; and on March 17, 1880, she brought her suit in the circuit court of Rockingham against the said bank, and Jacob L. Sibert, Francis Staling, and Isaac Bilhimer (to whom the bill alleges that the bank had sold the said land in different parcels and put them in possession thereof, though no deeds had as yet been executed), claiming that she did not join her husband

in the deed of January 19, 1869, conveying the 249 acres, as required by law, to transfer or extinguish her right of dower in the lands conveyed by said deed from Isaac Paul to Wm. I. and Robt. C. Paul, and that by reason thereof and of the facts before stated she was entitled under and by virtue of the statutes in such cases made and provided to have her dower assigned to her in the whole tract of 249 acres. The prayer of the bill is that her dower in said land may be assigned to her, in lieu of which, however, the plaintiff declares her willingness to accept its commuted value in money.

On June 18, 1880, the said cause having been regularly matured and set for hearing as to all the defendants, the said bank moved before the circuit court of Rockingham to file its answer to said bill, which answer was then lodged with the papers in the suit; but the plaintiff excepted to the filing thereof, on the ground that the defendant thereby sought to supply by parol testimony what should appear on the record and was only provable by the record; and the court sustained the exception and rejected the answer. In this answer the bank insisted that the plaintiff had united with her husband in said deed to their two sons and acknowledged the same in the manner prescribed by law for married women, and thereby relinquished her right of dower; and that respondent *was informed, and believed,* that when said deed was made she appeared in person in said clerk's office, and then and there, after she and her husband had both signed the deed, was examined by the clerk of the county court of Rockingham privily and apart from her husband, and had the deed fully explained to her, and that she then and there acknowledged it to be her act, and declared that she had willingly executed the same and did not wish to retract it; and thereupon, after it had also been acknowledged by her husband, it was duly recorded as to both, as appeared from the "register of deeds" required

by § 10, ch. 117, Code 1873 ; and that by some oversight, or through accident or mistake, the certificate of the clerk, when the deed and acknowledgment was spread upon the records, failed to set forth all the facts herein set forth, and that the copy filed with the bill shows only what was written out by the copyist who transcribed the deed and endorsement into the deed-book, from which said copy had been taken ; so that through accident or mistake alone the endorsement or statement, as it appears at the bottom of said exhibit, does not set forth the facts which the complainant herself will not dare to deny. It was also insisted that the plaintiff's claim to dower under such circumstances was inequitable and unjust, and rested upon a mere technicality ; that the deed had been made to her own sons, and that she intended to give them a good title ; that the proceeds of the discount of their bonds had been used by Isaac Paul, or rather by the firm of Isaac Paul & Sons, composed of the father and his two sons aforesaid, in their business, out of which business the family of Isaac Paul, including the plaintiff, had been supported not only in comfort but in some degree of luxury ; and that it was only after the land had passed out of the hands of these sons, and after their insolvency and that of their father, and the recovery of her dower had thus become a matter of no moment to them, that the plaintiff asserted her pretended claim of dower.

Upon the rejection of said answer by the court, the bank offered to file a supplemental and amended answer, in which it was stated that since offering the former answer the bank had applied to Robert A. Gray, who was the clerk on January 19, 1869, to make a full record of his action in connection with the taking by him of the plaintiff's said privy examination and acknowledgment to said deed, and that said Gray had made such full record as of the date of such former certificate, and that said deed, together with such

full record, had been again recorded—to-wit: on June 17, 1880—by Joseph T. Logan, the then clerk ; and an attested copy of said deed and record was exhibited with the said amended answer. But the plaintiff excepted to the filing thereof on the ground that R. A. Gray's term of office having expired, he had no power or authority to amend the records of said court, and that the amendment of the certificate of acknowledgment to said deed was made without the solemnity of an oath or other valid evidence of the truth of the facts certified therein, and was therefore more objectionable than the attempt to supply the defects in the certificate of acknowledgment to said deed by parol testimony ; and the court sustained likewise this exception, and rejected also said supplemental and amended answer. The attested copy of said deed and record exhibited with the last answer contained, besides the certificate of acknowledgment already shown in this statement, another and full certificate, dated January 19, 1869, to the effect that all the requisites of the statute in reference to the privy examination and acknowledgment by married women, had been complied with.

The court, after rejecting said answers by its decree of June 18, 1880, further decreed that said Mary J. Paul should recover her dower in said land, and referred the cause to a commissioner to ascertain one-third of the value of the land at the time of her husband's death, deducting the value of such permanent improvements then existing as may have been made (after the alienation) by the alienees of said Isaac Paul or his assignees ; and also to ascertain the commuted value of plaintiff's dower in said land, the bank electing to pay the same so as to perfect the title of its vendees to whom it sold the land with general warranty, and the plaintiff agreeing to accept commutation. From this decree the said bank applied for an appeal and *supersedeas ;* which were allowed.

*John E. Roller,* for the appellant.

*G. W. Berlin,* for the appellee.

STAPLES, J., delivered the opinion of the court.

The amended certificate relied upon by the bank is in no just sense of the word an official act. At the time it was given Mr. Gray had long ceased to be clerk. It is, therefore, the mere declaration of a private person, giving his recollection in 1880 of what occurred before him as clerk in 1869. We must assume, however, that the bank, had the opportunity been given it, would have proved by Mr. Gray every fact stated by him.

The question then is, is it competent to show by parol testimony that the privy examination of the wife was regularly taken in the form prescribed by the statute; but that the clerk through accident, inadvertance, or mistake, has omitted some of the material statements required to be set forth in the certificate of privy examination. This question can be best answered by the provisions of our statute on the subject, found in chapter 117, Code 1873. It is there enacted that the wife must be examined privily and apart from her husband; the writing must be fully explained to her; she must declare it to be her act; that she executed the deed willingly, and does not wish to retract it. The clerk or justice, as the case may be, is then required to certify such privy examination, declaration, or acknowledgment on or annexed to the deed, and the certificate must be admitted to record at the time of recording the deed. The statute then proceeds: "When the privy examination, acknowledgment, and declaration of a married woman shall have been taken and certified as aforesaid, and the writing to which such certificate is annexed shall have been delivered to the proper clerk, and admitted to

record, as to the husband as well as the wife, such writing shall operate to convey from the wife her right of dower in the real estate embraced therein."

It will thus be seen that the statute prescribes the necessary steps to be taken preparatory to a valid relinquishment of the claim for dower.

The certificate must set forth her declaration and acknowledgment as prescribed by the statute; it must be on or annexed to the deed; it must be admitted to record along with the deed, and when all these requirements shall have been complied with, and not till then, the writing operates to convey from the wife her right of dower.

The object of this statute is to provide a substitute for the proceeding by fine in England, which was never in force in Virginia, whereby the rights of the *feme* on the one hand might be carefully guarded, and a sure, indefeasible title and an unquestionable transfer of her right secured on the other.

As was said by Judge Tucker, *Harkins* v. *Forsyth,* 9 Leigh, 301, "The validity of the deed is made to depend not upon the truth of the certificate, but upon its existence, and its delivery to the clerk." It is the authentic and sole medium of proving that the *feme* covert has acknowledged the deed with all the solemnities required by the statute. In *Hairston* v. *Randolphs,* 12 Leigh, 459, Judge Allen said: "The certificate must show that everything is done which is required by law to be done." And this upon the principle that where the law authorizes any one to make an inquiry of a judicial nature and to register the proceeding, the written instrument so constructed is the only legitimate medium to prove the result. 3 Stark. on Ev. 1043-4.

And although the numerous Virginia decisions on the subject of the wife's relinquishment of dower do not determine this precise question, no one can read these decisions without perceiving that all the reasoning of the judges is

against the admission of parol testimony to prove or disprove the privy examination, or in any manner to affect the certificate of such examination.

Fortunately, we are not without express authority in other States upon the point.

The researches of the learned counsel for the appellee have supplied us with a multitude of cases which speak with one voice, and leave no room for doubt on the subject.

In *Smith* v. *Ward*, 2 Root, 378, reported in 1 American Decisions, 86, notes, the court says : " Again parol evidence will not be received to support a certificate where it is palpably defective by omitting to state some fact the law requires."

In *Watson* v. *Bailey*, 1 Binny, 470, it was held that where the certificate omitted to show a voluntary examination, parol declarations of the wife could not be omitted to supply the defect.

In *Jourdan* v. *Jourdan*, 9 Serg. & Raw. reported in 11 American Decisions, 724, Tilghman, Chief Justice, declares the principle now firmly established is, that the requisities of the act of assembly by which the mode of conveyance by femes covert is prescribed, must appear to have been substantially complied with upon the face of the certificate made by the magistrate by whom the acknowledgment was taken; and he emphatically declares, that parol evidence of the magistrate himself is inadmissible for the purpose of supplying the defects in the certificate. In *Elliott* v. *Perisal*, decided by the supreme court of the United States, and reported in 1 Peters, 333, the original certificate of the clerk was radically defective. Ten years afterwards the same clerk amended his certificate, which showed a compliance with the statute relating to the privy examination of the wife. The decision of the court turned upon the construction of the Kentucky statutes, which are taken from ours, and it was held that the privy examination and

acknowledgment of a deed by a married woman, so as to pass her estate, cannot be legally proved by parol testimony; that the authority of the clerk to make a record of the certificate is *functus officio* so soon as the record is made; and that he has no power thereafter to make another or amended certificate. The court, in this connection, uses the following language :

" What the law requires to be done and appear of record can only be done and made to appear by the record itself, or an exemplification of the record. It is perfectly immaterial whether there be an acknowledgment or privy examination in fact, or not; if there be no record of the privy examination—for by the express provisions of the law it is not the fact of privy examinations merely—but the *recording* of the fact which makes the deed effectual to pass the estate of a *feme* covert."

It would seem, therefore, to be very clear that parol testimony is inadmissible to supply the absence of an entire certificate, or defects in an existing certificate.

The same rule of exclusion necessarily applies in both cases. The citation of authorities in support of this doctrine may be multiplied almost without number, and in the absence of all authority upon principle, it would seem to be very clear.

We are therefore of opinion there is no error in the decision of the circuit court, and that decision must be affirmed.

JUDGMENT AFFIRMED.