Syllabus.

# Richmond

## McCauley and Others v. Grim and Others.

November 20, 1913.

1. DEEDS—*Acknowledgment—Judicial Act—Impeachment.*—Taking and certifying the acknowledgment of a deed is regarded as a judicial act in this State, and hence the certifying officer's determination of the matters involved has the conclusive force and effect of a judgment and imports absolute verity, and cannot be collaterally attacked. It cannot be impeached even directly, save in a court of equity, and not then except for fraud.

2. JUDGMENTS—*Res Judicata.*—Where one was a party to another litigation in which his title to a tract of land was put in issue and decided against him, the matter as to him is *res judicata.*

3. INFANCY—*Revocation of Deed—Proof Required.*—Where the grantor in a deed was, at the date of the deed, on the border line of his majority and acted as an adult, making his own bargain and receiving his share of the purchase money, the evidence of his infancy at that time should be clear and satisfactory to justify a court in depriving an innocent purchaser for value and without notice of land of which he and his predecessors in title had been in undisputed possession for thirty-odd years without any intimation of an adverse claim, though the claimant lived in the neighborhood.

4. DEEDS—*Possession—Presumption of Grant—Evidence.*—Where the origin of the possession is not accounted for, and would be unlawful unless there had been a grant, length of possession is *prima facie* evidence, but only *prima facie,* from which a jury might or might not have presumed a conveyance.

5. LIMITATION OF ACTIONS—*Life Estate—Fee-Simple—Merger—When Statute Begins to Run.*—Possession under a claim of title for a period of fifteen years ripens into a perfect title as well against a life tenant as against others, and if such possessor also has title to the remainder in fee, the fee merges the lesser estate, and the statute of limitations against one claiming an interest as a remainderman begins to run from the time of the merger, and not from the death of the life tenant.

Appeal from a decree of the Circuit Court of Rockingham county. Decree for some of the defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Chas A. Hammer* and *Rudolph Bumgardner,* for the appellants.

*Conrad & Conrad* and *Sipe & Harris,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

Appellant, Amanda C. McCauley, filed her bill at the May term, 1911, of the circuit court of Rockingham county against the appellees, Deihl and Baugher and wife, and others, for partition of 120 acres of land situated on Shenandoah river, in that county.

Plaintiff asserts title to an undivided share in the land as one of the heirs of her mother, Elizabeth Grim, who intermarried with her father, Thomas Becks. The bill contains no specific denial that the plaintiff united with her husband and brothers and sisters in the deed of August 20, 1869, conveying the land in controversy to Polly Eutsler, Benjamin Rice and Jacob Grim, under whom the present owners claim, but contents herself with the allegation that the parties referred to executed the deed, and exhibits what purports to be a copy, presumably for the purpose of showing that she was not a party to the instrument. During the progress of the case, however, the original deed was put in evidence, from which the plaintiff's name appears as one of the grantors.

Appellees demurred to the bill and filed answers in which they averred that the deed was duly executed by the plaintiff and acknowledged before two justices, whose

certificate showed that, on being examined by them privily and apart from her husband, and having the writing fully explained to her, she acknowledged it to be her act, and declared that she had willingly executed the same and did not wish to retract it—that being the form of certificate required by statute at that time. The present owners also alleged that they were innocent purchasers of the land for value and without notice of plaintiff's claim, and Deihl proved that he had erected permanent improvements upon his part of the tract, at a cost of upwards of $3,000.

Though, as observed, no such case is expressly made by the bill, the plaintiff, over the objection of the defendants, sought to prove by parol evidence that she neither executed nor acknowledged the deed. Among other witnesses introduced for that purpose, one of the justices was relied on to impeach his own certificate. His deposition was taken thirty-seven years after the date of the deed, and after the death of his associate.

It is settled law in this State that taking and certifying acknowledgments to a deed is a judicial act, and, therefore, the certifying officer's determination of the matters involved has the conclusive force and effect of a judgment and imports absolute verity, and cannot be collaterally attacked.

"It cannot . . . be impeached, even directly, save in a court of equity, and not then except for fraud." 2 Minor on Real Property, section 1398. *Carper* v. *McDowell,* 5 Gratt. (46 Va.) 212, is a leading case in Virginia on the subject. Judge Baldwin, in his opinion, emphasizes the importance of giving conclusive effect to such certificates, and says: "It follows from the nature and purposes of such a jurisdiction (probate jurisdiction) that, though its proceedings are often and most generally *ex parte,* yet that, when perfected, they are evidence for and against the whole world; that they cannot be impeached by extrinsic

evidence in collateral controversies concerning the rights to property, and that, as a general rule, they cannot be so impeached, even directly, in a suit instituted for the very purpose. If this were otherwise, the obvious result would be to defeat, in a great measure, the object of the probate jurisdiction, and to introduce much uncertainty and confusion into the administration of justice."

In *Building Association* v. *Graves,* 96 Va. 138, at page 140, 31 S. E. 23, Judge Buchanan, at page 140, remarks: "The object of the registry laws is to secure titles and to prevent frauds. The certificate of acknowledgment is required to perfect the deed for recordation. As the record, when made, is constructive notice to all the world, public policy requires that it should import as near absolute verity as is consistent with a due regard to the rights of the parties interested. It would open the door to great abuses and gross frauds to make the validity of the registration of a deed depend upon the recollection or the subsequent conduct of the party who took the acknowledgment." *Bank* v. *Paul,* 75 Va. 594, 40 Am St. Rep. 740; *Murrell* v. *Diggs,* 84 Va. 900, 6 S. E. 461, 10 Am. St. Rep. 893.

The present case furnishes an apt illustration of the mischievous consequences that would result from the relaxation of the rule which forbids that such certificates shall be drawn in question by parol evidence in collateral proceedings. The bill wholly fails to advise the defendants of the real ground upon which the plaintiff rests her case. The suit was brought forty-two years after the date of the deed, and the evidence chiefly relied on to sustain plaintiff's contention is furnished by the depositions of herself and husband and one of the certifying justices, who was seventy-nine years old when he gave his deposition, and was testifying to a transaction which occurred thirty-seven years before; and, besides, the developments in the case strongly tend to discredit him as a witness.

Plaintiff lived in the immediate vicinity of the land, and stood by and saw an innocent purchaser making valuable improvements thereon, without the slightest intimation of her purpose to claim a share in the estate until she brought her suit. She seeks to excuse her conduct and long delay on the plea that she is a married woman, and also that her father, Thomas Beck, was tenant by the curtesy of the land, and that she filed her bill within four years after the life estate fell in. The common law disabilities of married women with respect to their property rights have in large measure been removed by statute, and, in a court of conscience at least, their moral responsibilities of ownership should be proportionately increased. The effect of the alleged intervention of Thomas Becks' life estate will be considered in connection with Isaac T. Becks' petition.

Our conclusion upon this branch of the case is that the plaintiff is not entitled to relief, either upon the pleadings or evidence, and that her bill was properly dismissed.

Elizabeth F. Tate and Isaac T. Becks, two of the other heirs, both filed petitions in the main case. They admit that they conveyed their interest in the land to grantors of the appellees, the former by her separate deed and the latter by uniting in the deed of August 20, 1869; but they allege that they were infants when these conveyances were executed, and the object of their petitions is to repudiate their respective deeds on that ground and to have partition of the land.

With respect to the claim of Elizabeth F. Tate, the record shows that she was a party to another litigation in which her title to the land was put in issue, which issue was determined against her by the court and her petition dismissed, hence the matter as to her is *res adjudicata.*

The only direct evidence of Isaac Becks' age is furnished by his own deposition, supplemented by his unsworn statement made after the execution of the deed, upon which

he obtained a marriage license. The family Bible, in which was registered the ages of himself and his brothers and sisters, is in the possession of the plaintiff, Mrs. Mc-Cauley, but the age register has been torn out and was missing, it is said, when she received the book from her father. Isaac, at the date of the deed, was on the border line of his majority and acted as an adult, making his own bargain and receiving his share of the purchase money. In such case it is no hardship to require that the proof of his infancy should be clear and satisfactory to justify a court in depriving an innocent purchaser for value and without notice of land of which he and his predecessors in title had been in undisputed possession for thirty-odd years without any intimation of an adverse claim, though the claimant lived in the neighborhood. In a somewhat analogous case this court recently held the proof of infancy insufficient. *Hurt* v. *Blankenship,* 112 Va. 574, 72 S. E. 117.

But the decision need not be rested alone upon that consideration. Assuming that petitioner's statement that he was twenty-one years old on February 16, 1871, is true, and also conceding that he had the right to disaffirm his deed at any time within fifteen years from that date (*Wilson* v. *Branch,* 77 Va. 65, 46 Am. St. Rep. 709; *Burch* v. *Linton,* 78 Va. 584, 49 Am. Rep. 381), nevertheless, upon that basis his right would have expired on February 16, 1886, and he did not file his petition until July 30, 1906, a period of more than twenty years after he became of age.

But he seeks to avoid the effect of that limitation on the theory that his father, as tenant by the curtesy, was entitled to a life estate in the land, and that his petition was filed within fifteen years after his death.

If that contention be sound as a general proposition, as to which we need express no opinion, it cannot prevail under the facts before us. The predecessors of the appel-

lees took complete possession of the land at the date of their deed, on August 20, 1869, with the knowledge of all concerned, including the life tenant, Thomas Becks. The land was transferred to them on the land books for the ensuing year, and they and those claiming under them have continuously paid taxes thereon, and have remained in the open, adverse and undisputed possession until now. Thomas Becks never questioned their title or possession, and substantially declared that they were the rightful owners of the property. It is true no deed from him was produced, yet the court, under the circumstances, might well presume a conveyance.

"Where the origin of the possession is not accounted for, and would be unlawful unless there had been a grant, length of possession is *prima facie* evidence, but only *prima facie,* from which a jury might or might not have presumed a conveyance." 2 Minor on Real Property, section 1035.

The defendants' possession was unquestionably under *claim of title,* and after the lapse of fifteen years, to-wit, on August 20, 1884, it ripened into a perfect title. On that date their title was as complete as if they had held the life estate by deed from Thomas Becks. They already had title to the remainder in fee simple, and the two estates in the same land having become vested in the common owners, under the common law doctrine of merger, the lesser estate merged in the greater (1 Minor on Real Property, section 375), and the statute of limitations began to run against Isaac Becks at the time of the merger and not at the death of Thomas Becks. Upon this hypothesis his right to disaffirm expired August 20, 1899.

In every aspect of the case the decree of the circuit court is plainly right and must be affirmed.

*Affirmed.*