# Richmond

BETTY NELMS MURDOCK v. ALLEN T. NELMS, ETC.

January 17, 1972.

Record No. 7646.

Present, All the Justices.

*Beverley H. Randolph, Jr.; E. Griffith Dodson, Jr. (Peyton, Beverley, Scott & Randolph; Dodson, Pence, Coulter, Viar & Young, on brief), for appellant.*

*William R. Rakes (R. R. Rush; Gentry, Locke, Rakes & Moore, on brief), for appellees.*

HARMAN, J., delivered the opinion of the court.

This is an appeal from the action of the trial court in holding that Nancy Norma Nelms (Nancy) had effectively changed her beneficiary of certain life insurance and retirement benefits and in refusing to impress a resulting trust on the funds which later became payable therefrom in favor of Betty Nelms Murdock (Betty), who was the beneficiary prior to such changes.

In the trial court factual issues of Nancy's mental capacity and of fraud and undue influence on the part of Allen T. Nelms (Allen) were raised. It is sufficient to say that these factual issues were resolved against Betty by the trial court and, after a careful review of the record, we find no error in these holdings.

Nancy was a school teacher who had been employed for many years by the Roanoke School Board. As a teacher she was entitled to purchase group life insurance and to participate in a retirement program, both of which were administered by the Board of Trustees of the Virginia Supplemental Retirement System (Board).

In 1963 Nancy designated Betty as the beneficiary of her group life insurance policy and of survivor's benefits under the retirement plan. In order to change her beneficiary it was necessary for Nancy to execute a written designation of such change before a person authorized to take acknowledgments and to file the same with the Board.

On February 20, 1967, Nancy, who was then hospitalized with a cancer which was terminal in nature, signed a change of beneficiary for her life insurance and retirement benefits on forms provided for that purpose by the Board. At the time Nancy signed the forms they were blank except for her signature. When the forms were signed by Nancy only. Allen was present.

Later the same day Allen took the signed forms to the office of the Roanoke School Board where he delivered them to Marieta S. Reed (Reed), an employee, who was a Notary Public. Allen, at Nancy's direction, told Reed of Nancy's desire to change her beneficiary to each of the benefits from Betty to Nancy's estate. Both forms, with the change of beneficiary and other information set forth in the appropriate blanks, were filed by mail with the Board in Richmond on February 23, 1967.

The certificates, signed in each instance by Reed, read as follows:

"On this 20th day of February, 1967, Nancy C. Nelms, whose name is signed to the foregoing instrument, personally appeared before me, acknowledged the foregoing signature to be his and having been duly sworn by me, made oath that the statements made in the instrument are true."

Betty argues that the changes of beneficiary were ineffective because they were not properly acknowledged.[1] Other than the

---

[1] Betty's standing to challenge the acknowledgements has not been raised and is not before us for decision.

certificate itself, the only evidence in the record about the acknowledgment is from Allen, who delivered the forms to Reed.

His testimony in that regard is as follows:

"Q. When did the Notary come?

"A. I took the papers over to the School Board office and this lady who had notarized other papers and the Power of Attorney for Nancy, she notarized it.

"Q. In other words, the Notary never asked her if she acknowledged this to be her signature?

"A. She knew her signature. She had notarized the Power of Attorney and maybe other papers.

"Q. She never actually talked to your sister?

"A. No."

The trial court, who saw and heard him testify, interpreted Allen's testimony to mean that the Notary was not present when Nancy signed the forms instead of an absolute statement that the Notary did not properly take the acknowledgment after the papers were left with her. As the trial court pointed out in its opinion, the record is silent on what occurred after the forms were delivered by Allen to Reed. We do not know who provided and filled in the information that was not on the forms at the time they were handed to Reed by Allen.[2] The record does not show where or under what circumstances the Notary's certification was completed.[3] We do not know who mailed the completed forms to the Board in Richmond.

[■] It is settled in Virginia that taking and certifying of acknowledgments is a judicial act. Where it is admitted or established that there was an appearance before the certifying officer, his determination of the matters involved has the conclusive force and effect of a judgment and imparts absolute verity, and cannot be collaterally attacked. It cannot be impeached, even directly, save in a court of equity, and not then except for fraud. *Martin* v. *Williams*, 194 Va. 437, 445, 73 S.E.2d 355, 359 (1952); *New* v. *H. E. Harman Coal Corp.*, 181 Va. 627, 634, 26 S.E.2d 39, 42 (1943); *McCauley* v. *Grim*, 115 Va. 610, 612, 79 S.E. 1041, 1042 (1913).

But where, as here, the attack upon the acknowledgment rests upon nonappearance before the certifying officer, no fraud need be

[2] Nancy's name, home address, social security number, employer's name and code number and the change of beneficiary were typewritten into the forms.

[3] The blanks in the Notary's certificate were filled in in handwriting.

shown. *Le Mesnager* v. *Hamilton*, 101 Cal. 532, 35 P. 1054 (1894). A certificate of acknowledgment may always be impeached by showing that the person who is alleged to have executed the instrument in question never appeared before the certifying officer and never actually acknowledged the instrument. *Bouvier-Iaeger Coal Land Co.* v. *Sypher*, 186 F. 644, 660 (C.C.S.D. W.Va. 1910), *aff'd* 191 F. 1006 (4th Cir. 1911), *cert. denied* 226 U.S. 613 (1913); *see also* 1 Am. Jur. 2d, *Acknowledgments* § 99 (1962) and the cases cited therein.

To impeach an acknowledgment, whether for fraud or nonappearance, the burden rests upon the one alleging it. In order to carry this burden the proof must be clear, cogent, satisfactory and convincing beyond reasonable controversy. *Martin* v. *Williams, supra; Webb* v. *Trent's Ex'r.*, 162 Va. 500, 174 S.E. 755 (1934).

Viewing the testimony relied upon by Betty and applying the rules set forth above, we agree with the trial court that Allen's testimony did not establish nonappearance by clear, cogent and convincing evidence. The Notary is presumed to have properly performed her duties and there is no evidence in the record that Nancy's acknowledgment was not taken by the Notary after the forms were handed to her by Allen. The evidence is, therefore, insufficient to establish nonappearance by Nancy and impeach the acknowledgment.

Betty's final argument is that we should impress a resulting trust on the proceeds received by Nancy's estate from the life insurance contract and retirement fund. This argument is without merit since Betty had no such equitable interest in either the insurance policy or retirement benefits as would be required to support a resulting trust. The life insurance premiums were paid and contributions to the retirement fund were made by Nancy, who had reserved the right in each instance to change her beneficiary. Nancy's ownership of the insurance policy and her rights in the retirement program were vested and absolute. Betty, during Nancy's lifetime, had only a mere expectancy similar to that of a legatee during the lifetime of the testator. *Smith* v. *Coleman*, 184 Va. 259, 35 S.E.2d 107 (1945).

*Affirmed.*

COCHRAN, J., dissenting.

I dissent. The testimony of Allen T. Nelms, as set forth in the majority opinion, leaves me in no doubt as to the manner in which

the certificates of acknowledgment on the change of beneficiary forms were executed by the notary public.

Nelms had assumed the responsibility of having the forms properly executed so his account of what happened is of critical importance. Unless his words are to be tortured, his testimony establishes to my satisfaction that the notary public knew the signature of Miss Nelms and executed the certificates of acknowledgment without requiring her personal appearance.

It is not to be expected that the notary would voluntarily come to court and testify that she had falsified her certificate. Indeed, she could not have been required to do so. But even if Nelms and the notary believed that the procedure which was followed was proper under the circumstances, their good faith is immaterial. The changes of beneficiary were ineffective if they were not personally acknowledged by Miss Nelms before the notary public. As the evidence impeaching the acknowledgment for non-appearance by Miss Nelms is clear, cogent, satisfactory, and convincing to me, I would reverse the lower court.