Staples, J.
It must be assumed for all the purposes-of this decision, that the bond in controversy was a. complete and perfect instrument on its face, at the time-of its delivery to the obligee. The defendants pleas- and the instructions given by the court are obviously based upon this hypothesis. It must also be assumed,, that at the time the bond was executed by the defendants, other than the principal obligor, it was agreed that it should not be delivered to the obligee, until executed! by other persons besides the defendants, and further,, that without being so executed, it was delivered by the-principal obligor to the obligee, who was not informed, of the condition annexed to the delivery of the instrument.
The question is presented, whether the bond under-this state of facts is binding upon the parties actually executing it as sureties.
It is very clear that a deed or bond may be committed, to a stranger to be delivered by him to the obligee upon the performance of a condition or the happening of an event; and if delivered before ti e condition is performed or the event happens, the bond will not take-effect, although the obligee ma}- not be apprized of the terms imposed, and although there is nothing on the face of the instrument to excite his suspicions or put him upon enquiry. In such case it is simply-a question off poA-er in the agent in making the delivery, and not a question of good faith in the obligee in accepting it.
The point to be considered then is-, whether there is-any substantial distinction between a delivery to a stranger and a delivery to the principal obligee by one who signs the instrument as surety. That such a distinction does exist, and that it is founded upon the-, soundest principles, I think is easily established..
*209 Wheu the bond is placed in the hands of a third person, who is a stranger to the consideration and to the instrument, to be delivered to the obligee only upon performance of some condition, such, person is a mere custodian of the instrument until the condition is performed, having no interest, or semblance of an interest, in the subject matter of the contract. The obligee, finding the paper in the hands of such a person, is bound to know how he obtained possession of it, and by what authority he undertakes to dispose of it. It is a case of naked special agency, governed by the principles applicable to that class of agencies. All persons dealing with such an agent are bound, at their peril, to enquire into the extent of his power and to understand its legal effect, and if the agent exceeds the limits of his authority the act, so far as it affects the principal, is void. When the bond is in the possession of a stranger, there is nothing in the character of the ageut, or in the custody of the instrument, calculated to mislead the obligee in unduly accepting it. On the contrary, the mere fact that a stranger, having no apparent interest in the boud, has possession of it, is of itself sufficient to excite suspicion, and to put the obligee upon enquiry as to his authority to dispose of it. When, therefore, the obligors deliver the bond to a stranger as an escrow, it cannot be said they have done an act or made a declaration calculated to mislead third persons. The most that can be said is, they have appointed an agent, who, in making an undue delivery, has exceeded his powers; but there is nothing in the manner of the appointment or the circumstances of the agency which prevents the principal from repudiating the act.
On the other hand, very different considerations, it seems to me, should govern where the surety signs a bond complete in all its forms and provisions, and en *210 trusts it to the principal obligor for a proper delivery to the obligee. It is true the principal obligor has no greater power than the stranger to whose custody the bond is committed; but in such a case the question is not what is the power conferred, but what is the power the obligee has the right to suppose is conferred. The principal obligor has certainly an apparent authority to deliver the instrument in its then existing form and condition; that is such an authority as may be fairly inferred from his connection with and possession of the paper. The reasonable presumption is, that he is to dispose of the bond according to the natural course of proceeding in such cases; that is, by a delivery to the obligee. It is true the agency is»a special one; but the agent being clothed with the evidence of agency for the general purpose of delivery, no secret limitations or restrictions ought to control the exercise of the power, so far as parties are concerned dealing with the agent, upon the faith of the apparent power.
The instrument being complete in form, (precisely such as would have been adopted if the parties signing it alone were to be bound,) being found in the possession of the very person who would have held it if the purpose had been to make an unconditional delivery, under such circumstances an obligee accepting it has the right to infer that the transaction is precisely what it purports to be, and that the real power is in fact co-extensive with the apparent power.
In the language of an eminent author: “ If the principal has justified the belief of persons dealing with his. agent, that the agent had from him sufficient authority to do as agent the precise thing, it is no answer on his part to say that the agent had no authority, or one which did not reach so far, and that it was a mistake on the part of the third party. It may have been his mistake, *211 but the question is, whether the principal Jed this third party into the mistake.” 1 Pars, on Cont. 39. If the principal seud his commodity to a place where it is the ordinary business of the person to whom it is confided, to sell, it must be intended that the commodity was sent there for the purpose of sale. If the owner of a horse send it to a repository of sale, can it be implied that he sent it thither for any other purpose than that of sale or if one send goods to an auction room can it be supposed that he sent them thither merely for safe custody ? 2 Kent’s Com. 621.
And so when the surety signs an obligation for the payment of money, and leaves it in the hands of him for whose benefit it was executed, is it to be presumed it was left there merely for safe custody ? May it not be fairly inferred it was intended rather for delivery to the obligee? Is the latter to go further and take it for granted, that there are secret limitations upon this power of delivery never communicated to him? When the surety signs his name to a bond and confides it to the principal obligor, he thereby makes a solemn declaration that he has become a party to the instrument, and he so makes and shapes this declaration that it is almost absolutely certain to reach the party who is most likely to be misled by it. It would seem to be a gross violation of justice and good faith to permit the surety, under such circumstances, to repudiate these solemn declarations by setting up conditions and limitations known only to himself and his co-obligors.
In Pickard v. Sears, 6 Ad. and El. 469, Lord Denman said, “ The rule of law is clear, that when one by his words or conduct wilfully, causes another to believe the existence of a certain state of things, and induces him to act on that belief so as to alter his previous position, the former is concluded from averring against the latte1* *212 a different state of things existing' at the time.”
And m Lickbarrow v. Mason, 2 T. R. 63, 70, the same doctrine was expressed in a form very familiar to the profession ; and that is, whenever one of two innocent &Persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it. Ihe great principle of the law of estoppel is, that when an act is done or a statement made by a party which can not be contradicted or contravened without fraud on his part and injury to others whose conduct has been influenced by the act or admission, the character of an estoppel will attach to what would otherwise be mere evidence.
In the May number of the LawBegister 1864, Judge Redfield uses the following language: “ Where the surety entrusts the bond to the principal obligor, in perfect form, with his own name attached as surety, and nothing upon the face of the paper to indicate that others are expected to sign the instrument in order to give it full validity against all the parties, he makes such principal his agent to deliver the same to the obligee, because such is the natural and ordinary course of conducting such transactions; and if the principal under such circumstances gives any assurances to the surety in regard to procuring other co-sureties or performing any other condition before he delivers the bond, and which he fails to perform, the surety giving confidence to such assurances must stand the hazard of their performance, and he can not implicate the obligee in any responsibility in the matter, unless he is guilty of fraud or rashness in accepting the security.”
These just and sensible observations are sustained by a number of well considered cases in the American courts. Smith v. Moberly, 10 B. Mon. R. 266; Millet v. Parker, 2 Metc. Ken. R. 608; Deardorff et als v. Fores- *213 mun, 24 Ind. R. 481; State v. Pepper, 31 Ind. R. 76; Passumpsic Bank v. Goss, 31 Verm. R. 318; State v. Peck, 53 Maine R. 284. I refer especially to the case Deardorff et als. v. Forestmun,24 Ind. R. 481; and State v. Peck, as containing an exhaustive review of all the authorities bearing upon the question.
It must be admitted there are contrary decisions in the courts of other States, among them The People v. Bostwick, 32 New York R. 445; State Bank v. Evans, 3 Green N. J. R. 155. Upon a careful examination it will be found, that in a large majority of the cases relied on to sustain the opposing view, it appeared that the obligee either had notice of the condition attached to the execution and delivery of the bond by the surety, or there was something in the transaction, or on the face of the instrument, to put him upon enquiry, or the obligee had not sustained any damage or loss, nor done any act to his own prejudice upon the faith of the instrument. Pawling v. United States, 4 Cranch R. 218; Wells v. Dill, 1 Martin R. 592; Bibb v. Reed, 3 Alab. R. 38; King v. Smith, 2 Leigh 157.
In Virginia this question has never been the subject of adjudication by any court of the last resort. In Ward et als v. Churn, 18 Gratt. 801, this court held that an instrument which on its face indicates that it is not complete, and that other persons are intended to sign it, is not binding upon those who do sign it, although the condition may not have been known to the obligee when it was delivered to him. But the court declined to express any opinion upon the effect of an instrument which is apparently complete, and which in no manner indicates that it is to be signed by others. In the course of his opinion Judge Joynes adverted to this question and to the conflict of authority upon it; but he said its decision was not necessary to the case before the court. *214 In Preston v. Hull 23 Gratt. 600, the instrument was imperfect and incomplete on its face when exhibited to in the fact that the name of an obligee had not been inserted. And this court held that the blank could no^ Ailed by an agent appointed by parol, and then delivered, in the absence of the principal, as a deed. It is clear that the doctrine of estoppel could have no application to the case.
Amid this conflict of authorities in other States, and in the absence of any express adjudication by this court, we are at liberty to adopt that rule which seems best.to accord with sound policy aud well established general principles of law.
In this State it is believed to have been the general practice and usage for parties execuling bonds as sureties to leave them in the possession of the principal obligor for delivery to the obligee. Until very recently no serious question has ever been raised as to their liability, whatever may have been the conditions imposed, unless indeed there was something apparent on the face of the instrument calculated to excite suspicion or enquiry.
It is impossible to foresee the mischiefs of establishing a different rule. An obligee having in his possession an instrument signed by responsible parties, to all appearances perfectly complete and valid, may at any distance of time be confronted and defeated by a secret parol agreement between the principal obligor and some one of the sureties, of the existence of which he had not even a suspicion. How is it possible to provide against these pretended agreements? How are they to be met and disproved ? In the nature of things the obligee can offer no evidence besides the bond, as a knowledge of the condition is generally confined to the principal obligor and the sureties.
*215 . It is a fundamental principle of the common law, that parol testimony is not admissible to vary or contradict a written agreement. In this case it is proposed to receive such testimony in its most objectionable form, by proof of a parol contract between the parties on one side, never communicated to the party on the other most interested in knowing it.
It has been said that the obligee may protect himself by requiring the personal acknowledgment of each one of the obligors. Apart from the inconvenience resulting from such, a rule, it is by no means certain that an •acknowledgement of that kind will furnish the necessary security. After a great lapse of time it would be as •difficult to prove the acknowledgement as the original •execution, unless indeed some independent proof of such acknowledgment shall always be presented along with the bond.
On the other hand nothing can be easier than for the surety to incorporate in the writing or endorse upon the paper, the condition upon which his signature isattached •or he may commit it to the custody of a third person in no manner connected with the transaction. This would furnish ample protection to the surety and constitute sufficient notice to the obligee. In the absence of some plain and obvious precaution of this sort, I think the parties whose names are attached to the instrument should be estopped to deny as against the obligee, that it is their deed.
Since the foregoing opinion was written, the 16th Vol. of Wallace’s reports has been published, containing the case of Dairs’ v. United States, page 1.
That case is identical with this, the surety having signed the bond on condition that it should not be delivered unless it was executed by other persons, who did not execute it; but the obligee had no notice of the *216 condition, and there was nothing to put him upon enquiry as to the manner of its execution. The Supreme court of the United States held that the bond was nevertheless binding upon the sureties. Justice Davis speaking for the court, said: In the execution of the bond the sureties declared to all persons interested to know,, that they were parties to the covenant and bound by it; and in the belief that this was so, they were accepted and the license granted. They can not, therefore, contravene the statement thus made and relied on without a fraud on their part, and injury to another; and where these things concur the estoppel is imposed by law. As they confided in Dair it is more consonant with reason that they should suffer for his misconduct than the government, who was not placed in a position of trust with regard to him.
It will be perceived, that the Supreme court rests its decision upon the doctrine of estoppel exclusively. And upon the same ground we are content to place the decision of this case. It only remains to consider the question raised by the defendants fifth instruction. This instruction asserts the proposition, that if the bond was executed by all the defendants except Isaac Vermillion, and in that condition was delivered to and accepted by the obligee, but afterwards with the consent of the obligee and without the consent of the obligors, was executed by Vermillion, then it is not the bond of any of said obligors who did not know of said transaction and consent to it.
It will be observed that the obligation is joint and several. In this respect it is different from the bond in Baber v. Cook, 11 Leigh 606, which was simply a joint obligation. In that case it was held that when a bond is executed by three persons and perfected by delivery, the sealing and delivery by another afterwards will not *217 avoid the bond as to the other's. In such case the obli- ..... . gation as to the three first signing is joint as between themselves, and several as it relates to the obligor last signing. And so in this case, if the fact be as assumed in the instruction, as between the parties first signing, the bond is j'oint and several, and "as to Vermillion, it is simply his several obligation. "Whether the plaintiff will be entitled to a joint judgment against the obligors first executing the bond, and a several judgment against the last, or whether in this action he is barred of any remedy against Vermillion, and will be compelled to-resort to a new suit against him, are questions in no* manner before us, and which we are therefore not called upon to decide. Moffett v. Bickle, 21 Gratt. 280. We have only to deal with the instruction as it is, which, for-the reasons suggested, was clearly erroneous, and should, not have been given.
This disposes of all the questions arising upon the-pleas and the instructions. In the progress of the trial' evidence was adduced tending to show, that at the time-the bond was signed by a part of the obligors, it was-agreed that the signatures of twenty sureties should be-obtained, and that there were then twenty seals or scrolls-upon the paper, extending to the bottom of the page whereas the bond as now exhibited by the plaintiff,, contains ten only. What would have been the effect of" such evidence offered under appropriate pleadings, it is-unnecessary now to say. The instructions given by the-Circuit Judge are not based upon any hypothesis of an incomplete instrument, or an instrument which upon its face indicates that it is to be signed by others; but they cover the broader ground that the bond, though perfect in form and execution, was not valid and binding until the conditions wej-e complied with, although these-conditions were never communicated to the obligee, and *218 nothing appeared on the face of the instrument to put him upon enquiry. The second, third and fourth clearly assert, and were no doubt intended to assert this proposition ; and in that aspect they have been argued by counsel and considered by this court. The first instruction is perhaps not objectionable, though of a somewhat vague and general character. Plea Ho. 2 affirms the same erroneous doctrine asserted in the instructions. Had it averred that the obligee was ap•prized of the condition, at the time the bond was deliv■ered to him, or that there were scrolls or seals upon the paper to which no signatures were attached at the time ■of such delivery, the plea would have presented an .-entirely different question for the consideration of the •court and jury.
Pleas Nos. 1, 4, aud 5 are general pleas of non est factum, to which there is no valid objection.
But for the error in admitting plea Ho. 2, and giving the instuctions before mentioned, the judgment of the Circuit court must be reversed, and the case remanded for further proceedings in conformity with the views herein expressed.
The other Judges concurred .in the opinion of Staples, J.
Judgment renersed.