# Wytheville.

## JAMES L. ANDERSON'S ADM'X v.
## W. A. LeSUEUR, ET ALS.

June 24, 1930.

Absent, Campbell and Holt, JJ.

The opinion states the case.

*John B. Boatwright* and *A. B. Dickinson*, for the appellant.

*Strode & Edmunds*, for the appellees.

EPES, J., delivered the opinion of the court.

This is a suit in chancery brought in the Circuit Court of Buckingham county by Mrs. Carrie A. Word, administratrix of James L. Anderson, deceased, late treasurer of Buckingham county, Virginia, against J. D. Ayres, W. A. LeSueur, O. R. Jeffrey, A. H. Williams and J. B. Brown.

James L. Anderson was treasurer of Buckingham county from January 1, 1912, until his death in November 1926, and throughout the whole of this time J. D. Ayres served as his deputy for the collection of taxes in Marshall Magisterial District. In 1922 he also collected 1921 tax tickets in Slate River District.

The purpose of this suit is to recover on two alleged bonds made payable to James L. Anderson, treasurer of Buckingham county, and conditioned upon the

faithful discharge by J. D. Ayres of his duties as deputy treasurer, which are signed and sealed by J. D. Ayres as principal and by said W. A. LeSueur, O. R. Jeffrey, A. H. Williams and J. B. Brown as sureties. One of the alleged bonds, dated May 13, 1920, is for the sum of $3,000.00 and is alleged to have been given to cover the acts of J. D. Ayres as deputy treasurer during the term of office for the years 1920–23. The other of said alleged bonds, dated February —, 1924, is for $6,000.00 and is alleged to have been given to cover the acts of J. D. Ayres as deputy treasurer during his term of office extending from his reappointment in 1924 until the death of James L. Anderson in 1926. The $3,000.00 bond is also signed by H. M. White, who, it is alleged, has died insolvent. It is alleged and admitted that during both of his said terms of office J. D. Ayres collected a large sum of taxes which he has not paid over to either James L. Anderson or his administratrix; and before this suit was begun he confessed judgment in the clerk's office of Buckingham county in favor of either James L. Anderson or his administratrix (the record does not show which), for the sums which it is sought in this suit to recover.

Ayres is insolvent, and the real purpose of this suit is to recover of the sureties on said alleged bonds for the default of J. D. Ayres. J. D. Ayres has not appeared or pleaded in this proceeding though he was called and examined as a witness by the other defendants. The defendants, other than J. D. Ayres, demurred to and answered said bill.

The appellees all admit that they signed and sealed both of these bonds and that these instruments in the form in which they were executed by them were delivered by them to J. D. Ayres and by him to James Anderson. Though several of the obligors, with what

appears to be a lack of frankness, attempt to leave the impression that they did not understand that they were executing a surety bond when they executed these papers; yet there can be no question that all the obligors knew that the purposes for which these instruments were executed by them were that J. D. Ayres might give bonds with surety for the faithful performance of his duties as deputy treasurer for Mr. Anderson during the said several terms; and that said sureties in both instances intended that the instrument executed by them should be delivered by J. D. Ayres to Mr. Anderson as and for the surety bond of J. D. Ayres as his deputy treasurer.

The contention of the appellees is that neither of said alleged bonds is a valid instrument binding upon them, for the reason that in each case, when the instrument was executed by them and delivered to James L. Anderson, it was merely a blank form for a bond, with blanks left for the amount, the names of the obligors and other material matters; and that thereafter material additions were made to the instrument by filling in these blanks with the names of the obligors, the amount of the bond, and other material matters and a material alteration was made therein by changing the name of the obligee from the Commonwealth of Virginia to James L. Anderson, treasurer of Buckingham county.

By decree entered October 9, 1928, the court adjudged and decreed that both said alleged bonds were invalid and not binding upon the parties whose names and seals are affixed thereto; and dismissed the bill. The cause is here on an appeal allowed to the complainant, Mrs. Carrie A. Word, administratrix of James L. Anderson. The only questions presented to the court on this appeal are whether said bonds or either of them are valid and enforceable instruments.

In the case of the alleged bond dated February —, 1924, for $6,000.00 the bill itself admits and the evidence is clear and without conflict that when the instrument was executed and delivered by the several obligors thereon it was nothing more than a blank form for a surety bond made payable to the Commonwealth of Virginia. The names of the obligors, the amount of the bond, and the date of the bond were all left blank. The condition of the bond was so filled out with a typewriter as to make it apparent that it was intended to be a bond conditioned upon the faithful performance by some person of his duties as deputy treasurer for James L. Anderson, but the name of the person for the performance of whose duties as deputy treasurer the bond was given was left blank.

In 1926, after the discovery of the fact that J. D. Ayres was in default, Mrs. Eldridge, a clerk in Mr. Anderson's office, at the direction of Mr. James L. Anderson, completed the paper by inserting in the blanks left therefor the following matter: (1) the names of the obligors, *"J. D. Ayres, J. B. Brown, O. R. Jeffrey, A. H. Williams and W. A. LeSueur"*; (2) the words *"February"* and *"and twenty-four"* in the date; (3) the name *"J. D. Ayres"* and the words *"Deputy Treasurer"* in the condition of the bond, thereby naming the person for the performance of whose duties the bond was given. She also at this time struck out the name of the Commonwealth of Virginia as the obligee of the bond and inserted thereover the words *"James L. Anderson, treasurer of Buckingham county,"* thus making the bond payable to James L. Anderson instead of to the Commonwealth.

The appellant does not contend that there was ever any express authority, either verbal or written, given by the parties who executed said paper to any person

to fill in said blanks and complete said paper, or to make any alterations therein, and the testimony of all the obligors is that no such authority was given. The appellant's contention is that the execution and delivery of said paper, signed and sealed in blank, gave an implied authority to Mr. Anderson to fill in the blanks and complete the paper in accordance with the intention and purpose for which it was executed, and to change the name of the obligee from the Commonwealth of Virginia to James L. Anderson, treasurer of Buckingham county, and that it was filled up and completed in accordance with the intention of the parties.

The trial court held, both upon a consideration of the demurrer and upon a consideration of the matter upon the evidence, that said paper alleged to be a bond for $6,000.00 was not a valid instrument binding upon the parties whose signatures and seals are thereto affixed. The court in its judgment and decree in this particular was clearly right.

The rule is well established in Virginia, as it is in England, and in many jurisdictions in the United States, that authority cannot be given by parol to fill in, after execution and delivery, blanks in a non-negotiable sealed instrument, the filling in of which makes any material additions to or alterations in the instrument as delivered, and that such authority cannot be implied from the facts and circumstances of the execution and delivery of the paper.

Where, in reliance upon a claimed implied authority, after a non-negotiable sealed instrument has been executed and delivered, material alterations are made in it or blanks therein are so filled in as to make material additions thereto, redelivery of the instrument or ratification thereof by the makers, after the

alterations have been made or the blanks have been filled in, is necessary to its validity. *Preston* v. *Hull*, 23 Gratt. 600; *Penn.* v. *Hamlet*, 27 Gratt. 337; *Gordon* v. *Funkhouser*, 100 Va. 675, 42 S. E. 677. See following cases as to immaterial change or addition: *Whiting* v. *Daniel*, 1 Hen. & Munf. 390; *Keen* v. *Moore*, 75 Va. 424.

The appellant admits in her brief: "That there is strong authority in Virginia for the proposition, that the filling in of the name of the payee, the amount of the bond, etc., in a blank form of bond, does constitute a material alteration which relieves the sureties, at least, of any liability thereunder." But appellant contends that this court should refuse to follow the rule as laid down in the authorities above cited; and now adopt as the law of Virginia the rule that authority to fill in blanks in non-negotiable sealed instruments may be given by parol and may be implied from the facts and circumstances of the execution and delivery of the paper; and that when a person executes a bond, and, knowing that it contains blanks to be filled up before it can be perfected, delivers it to another without stipulating or expecting that the paper is to be afterwards returned to or exhibited to him, but expecting that the person in whose hands it is placed for delivery, or the obligee after delivery, will fill in said blanks in accordance with the intentions of the parties and he does so fill it in, it will constitute a valid and binding instrument. The appellant cites a number of decisions in other jurisdictions and other authorities which adopt this view.

Appellant further asserts that "the refinements of logic and reasoning which form the basis of this conclusion (the conclusions reached in the Virginia cases above cited) can find but little support in the modern methods of business, nor can it find support in con-

siderations of reason and justice"; and argues with force that "to permit the appellees now to say that they are not bound by the plain purport and intention of the paper which they signed, would constitute a fraud upon Anderson which no court ought to permit." These same arguments were submitted to the court in *Gordon* v. *Funkhouser, supra;* and the answers to them there given need not be again stated here, further than to reiterate that the rule announced in the cases above cited has been so well and so long established as the law of Virginia, that if the same should be changed, the change should be made by the General Assembly, whose prerogative it is to legislate, and not by this court, whose function it is to ascertain and declare the law.

While in the case of the alleged $6,000.00 bond the bill contained an admission that the blanks therein were filled up after the bond was executed and delivered, and the evidence is clear and without contradiction that this was the fact, as to the $3,000.00 bond, dated May 13, 1920, the bill contains no such admission, and there is a serious conflict in the evidence as to whether the blanks therein were filled up and the patent alterations thereon made before or after the same was executed by the several obligors.

The appellant contends that said bond was in its completed form as it now reads at the time it was executed and delivered by the several obligors. The appellees contend that the paper at the time it was executed and delivered was nothing more than the blank form for a bond, and that material additions were thereafter made thereto by filling in blanks and making material alterations in the paper.

The facsimile reproduction of the alleged $3,000.00 bond in its present condition is here given.

Everett Waddey Co.
Stationers and Printers,
Richmond Va. | Form No. 304

Know all Men by these Presents, That we _____
J B Bowie, d H Wills ___, O H Jeffries, M A Ledmm ___
His estate

_____ James L Anderson Tres and of Buckingham County _____
are held and firmly bound unto the Commonwealth of _____ in the sum of
Three _____ Dollars, to the payment whereof, well and truly
to be made to the said _____ we bind ourselves, and each of us, our and
each of our heirs, executors and administrators, jointly and severally, firmly by these presents.
And we hereby waive the benefit of our exemption as to this obligation, and any claim or right
to discharge any liability to _____ person under this bond, or by virtue of said
office post or trust, with _____ of _____ bonds of the State. Sealed with our seals
and dated this _____ 13 _____ day of _____ May _____ 19 10
one thousand nine hundred.

THE CONDITION OF THE ABOVE OBLIGATION IS SUCH, That whereas,
J D Clyes _____ who has been duly appointed and qualified as Deputy
Treasurer for James L Anderson, Treasurer of Buckingham County and
being required to give bond that he will collect all tax tickets placed
in his hands and pay over same to said Treasurer at least once a month
that he will make his delinquent returns on the last day of July in each
_____ year, and that he will faithfully perform all duties pertaining to
to said office, post or trust, of Deputy Treasurer as Aforesaid.

Now, therefore, if the said _____ as aforesaid, shall
faithfully discharge the duties of his office, post, or trust of
then this obligation to be void, otherwise to remain in full force and effect.

(SEAL)
(SEAL)
(SEAL)
(SEAL)

In the Clerk's Office of the _____ Court for the _____ of
the _____ day of _____ 191_

This bond was executed and acknowledged by the obligors and ordered to be recorded.

the same _____ therein having or a justification on oath, that _____ testified after the judgment of
all _____ just debts, and those for which he _____ is bound or security for others and
expect to have to pay _____ worth the sum of _____ Dollars
over and above all exemptions allowed by law.
Teste:

All the words in said facsimile which are shown as having a line drawn through them are struck out in red ink except the word "last" in the nineteenth line. The hyphens in the tenth and twentieth lines are in red ink, the dash before "James" in the fourth line is in red ink, and in the interlineation between the nineteenth and twentieth lines the word "first" and the comma are in red ink.

All the other handwriting in the body of the bond is in black ink and all of the writing except the names "J. B. Brown, A. H. Williams, O. R. Jeffrey, W. A. LeSueur and H. M. White" in the second and third lines are in the handwriting of Mr. C. E. Pearson, who was a clerk for Mr. Anderson at the time this alleged bond was given. The names of said sureties on the second and third lines are in the handwriting of Mr. James L. Anderson himself.

Mr. C. E. Pearson, who was called as a witness by the appellant, testifies positively that the typewritten matter upon said paper had been placed upon it before he put thereon any of the written matter; and that at the time he placed the other writing on the paper the names of the sureties on the second and third lines of the bond had not been put there, and he does not know when Mr. Anderson wrote these names in.

A close inspection of the paper itself bears out these statements. The lower part of the "J" and the lower part of the "y" in the name J. D. Ayres on the first line extends into the writing on the second line, and it is apparent that the "R" in O. R. Jeffrey and the "L" in LeSueur were superimposed on the lower part of said "J" and "y," respectively. The lower part of the "J" at the beginning of the fifteenth line is also written over the typewritten "T" in the word treasurer at the beginning of the sixteenth line.

The testimony is that in 1920 Mr. Anderson had no typewriter at his home or in his office, and that he was in the habit of getting a Mr. Carter, the cashier of the Merchants and Planters National Bank of Dillwyn, to fill in the typewritten portion in the forms for bonds of his deputies; and that the typewritten portion of the paper here in question was written on the bank's typewriter. Mr. Carter testifies positively that he never at any time did any typewriting for Mr. Anderson on any bond after it had been signed by any person.

While the witness Pearson testifies with positiveness that the typewritten matter was on the bond when he did the writing on it, he is not so positive as to whether the paper had been signed and sealed by the obligors when he placed the writing done by him thereon, as will appear from the following questions and answers taken from several portions of his testimony:

Q. "Please say in what condition this bond was when you did the handwriting on there which you say is your handwriting.

A. "As well as I remember all bonds that I ever filled out were blank with the exception of the typewriting that was on it.

Q. "Did you ever fill in any bond, either this or any other bond, for Mr. Anderson after the bonds had been signed by the sureties?

A. "Not that I remember.

Q. "Can you say whether or not the signatures of J. B. Brown, A. H. Williams, O. R. Jeffrey, W. A. LeSueur and H. M. White were on this bond when you wrote what you say you wrote on it with a pen and gave it to Mr. Ayres?

A. "No, I cannot say. There was no bondsman on any bond that I filled out, that I remember.

Q. "At the time you filled out this bond did you know yourself whether sureties were to be for Mr. Ayres?

A. "No.

Q. "Who made the red ink cancellations that appear on this paper?

A. "I do not know.

Q. "Were they on the paper at the time that you wrote upon it?

A. "I could not say that they were.

Q. "Your recollection is that they were not, is it?

A. "No, they may have been and they may not have been.

Q. "By whose direction did you write the words three thousand in this paper?

A. "By the direction of Mr Anderson or I got it off of the book one. I don't remember which. (Note: The book referred to was a book in which a list of the tax tickets delivered to deputies for collection were entered.)"

When asked on cross-examination whether it was not a fact that the amount of the bond was blank when it was executed and delivered to Mr. Anderson "and that Mr. Anderson kept it in blank for some time after, as the evidence in this case shows he did with the 1924 bond, and when after 1920 Mr. Anderson, in 1922, decided to have Mr. Ayres collect also in Slate River district he then directed you to fill in this 1920 bond for $3,000.00," Pearson's reply is: "I hardly think that is possible."

On the other hand, O. R. Jeffrey, W. A. LeSueur, J. B. Brown and A. H. Williams, the living sureties on said bond, each testified positively that at the time he signed the paper here in question the bond was a blank bond and contained none of the ink writing

which now appears on the paper in the body of the bond. They also further testified that to the best of their knowledge or recollection neither the red ink cancellations nor the typewritten portion of the condition of the bond were on the paper when they signed it; and that they at no time authorized any person thereafter to fill in any blanks or make any alterations in this paper, or knew that any blanks therein had been filled in or alterations made therein until after the question of their liability upon the bond arose after Mr. Ayres defaulted.

These sureties further testified that the amount of the bond was never discussed with them or mentioned to them. Mr. Brown had been a surety on a $2,000.00 bond given by Mr. Ayres as deputy treasurer for the term beginning 1916, and testifying as to the $3,000.00 bond, here in question, says: "I have no recollection of anything being said about the amount to be filled in in this paper. I naturally supposed it would be the same amount as the other."

While some of the sureties intimate that they signed the bond not expecting that the blanks therein would be thereafter filled up and the bond completed, the inference is inescapable that when they signed this bond they anticipated and expected that the paper would be completed by the filling in of the blanks left therein.

J. D. Ayres, the deputy treasurer, was called by the sureties on his said bonds as a witness for them. He testifies that Mr. James L. Anderson gave him this printed form for a bond and told him to sign it and to get his sureties to sign it; that he took the paper to the said sureties and got them to execute it; and that at the time the bond was given to him and at the time it was executed by Brown, Williams, Jeffrey, LeSueur

and White, there was nothing on the bond except the printed part, and specifically, that the amount had not been filled in.

He further testifies that he was not told by Mr. Anderson for what amount the bond was to be; that at the time it was executed by his said sureties and by himself he thought that the amount of the bond was to be for $2,000.00, the same amount for which he had given bonds covering his two terms as deputy treasurer beginning in 1912 and 1916; and that he did not know that the bond had been filled in for $3,000.00 until in 1927 when, in talking to Mr. Boatwright or Mrs. Eldridge, he stated that the amount of his bond given in 1920 was for $2,000.00, and one or the other of them told him that it was for $3,000.00.

In this connection Mr. Ayres testifies that prior to 1922 he had collected taxes only in Marshall Magisterial district, but that in 1922 the 1921 tax tickets for Slate River district were also placed in his hands for collection; and that at that time .r. Anderson told him that he would have to raise his bond $1,000.00.

Ayres, as has been stated, had, prior to the beginning of this suit, confessed judgment against himself for the amount which the administratrix of Mr. Anderson claims to be due by him, and could escape no liability by thus testifying; and his testimony is very clear and explicit that the time he secured the signatures of Brown, Williams, Jeffrey and LeSueur to the paper here in question, dated May 13, 1920, that it was a blank printed form for a bond with nothing but the printed matter thereon.

Though the testimony is conflicting, the preponderance of the evidence is that when this paper was signed by Ayres and the said sureties, and when it was delivered to Mr. Anderson, it was a blank form for a

bond, which was afterwards filled up so as to add thereto the names of the obligees, the amount and date of the bond, and was afterwards so altered as to change the name of the payee from that of the Commonwealth of Virginia to that of James L. Anderson, treasurer of Buckingham county, and to make changes in the condition thereof. The trial court also has found this to be the fact, and so adjudged, and its judgement is entitled to much weight.

From what has heretofore been said with reference to the law applicable to such cases, the judgment of the trial court that neither of said bonds is a valid and binding instrument and its decree dismissing the appellant's bill are without error.

The decree of the court is affirmed.

*Affirmed.*