# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢

J. E. Webb, et als. v. P. T. Trent's Executor, et als.

June 14, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Wilson, Kemp & Hobbs,* for the appellants.

*Early & Hoy* and *Martin & Tuck,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

J. Thomas Hamlett, on July 21, 1921, qualified as executor under the will of P. T. Trent. Under the terms of the will the executor was directed to deposit the money belonging to the estate in "some national bank" and pay the interest thereon to Lucy J. Adams, testator's daughter, during her life. The executor collected for the estate $14,131.37 and deposited it in the First National Bank of Brookneal, but before making the deposit required the bank, as principal, with its directors as personal sureties, to guarantee payment of the money. In 1926 the First National Bank was taken over by, or merged with, the Peoples National Bank of Brookneal. At the time of the merger, Hamlett, as executor, had the above-named sum on deposit in the first-named bank and held the above-described bond as security for payment of the same.

One of the obligors on this bond, C. C. Scott, who was a director of the First National Bank and after the merger became, for a few weeks, president of the Peoples National Bank, requested Hamlett to release him as surety on the bond. Hamlett, who lived in Charlotte county, some thirty or forty miles from Brookneal, sometime thereafter, to-wit, on April 4, 1927, went to the Peoples National Bank, surrendered the old bond and received

from A. P. Talley, the officer then in charge, the bond involved in this suit, signed by the Peoples National Bank, as principal, and the seven directors of the bank, as sureties. (See footnote.) Hamlett could neither read nor write and depended upon the members of his family, particularly his daughter, to attend to these matters for him. Upon reaching home on that day, his attention was called to the fact that while a notary's certificate was attached to the bond stating that R. C. Blackford, as president, had acknowledged his signature, there was no certificate, or only an incompleted one, of the acknowledgment of the sureties. On April 6th Hamlett took the bond back to the bank and called this omission, if it was an omission, to the attention of the active vice-president, who immediately had the same notary who appears to have taken the acknowledgment of the president fill in the blank form for the acknowledgement of the other obligors, and

"Know all men by these presents: That the Peoples National Bank of Brookneal, Virginia, Incorporated, principal, and J. E. Webb, R. C. Blackford, R. E. Adams, H. F. Walthall, and Jas. C. Gilliam, S. C. Goggin and R. E. Foster, sureties, are held and firmly bound unto J. Thomas Hamlett, executor of P. T. Trent, deceased, obligee, in the sum of fourteen thousand one hundred thirty-one dollars and thirty-seven cents ($14,131.37) together with all interest which has accrued or may hereafter accrue on said sum, for the payment whereof said principal and sureties bind themselves, their successors, and assigns, heirs, personal representatives, administrators and executors jointly and severally firmly by these presents and waive the benefit of their homestead exemption as to this obligation.

"Whereas, the said obligee now has to his credit on time certificate in the said principal, the sum of fourteen thousand one hundred thirty-one dollars and thirty-seven cents, being certificate of deposit issued by First National Bank, with interest thereon from the 22nd day of July, 1926, at the rate of four per cent per annum.

"Now, therefore, the condition of this obligation is such: That if the principal shall faithfully account for and pay on legal demand the said sum of money aforesaid to the credit of the said obligee, and shall not suspend payment thereof, then this obligation to be null and void, otherwise to remain in full force and effect.

"This obligation shall continue and be binding until the entire sum of money aforesaid, together with all interest due thereon has been entirely repaid by the said principal to the said obligee.

"In witness whereof the said Peoples National Bank of Brookneal, Incorporated, has caused its corporate seal to be hereto affixed and attested by A. P. Talley, its cashier, and this bond to be signed, acknowledged and delivered by R. C. Blackford, its president, and the said J. E. Webb, Jas. C. Gilliam, R. E. Adams, H. F. Walthall,

returned the bond to the obligee. Hamlett permitted the above-named sum to remain on deposit in the bank, collected the annual interest thereon and paid it to the beneficiary under the will until October, 1930, when the bank was closed and a receivership appointed.

Soon after the bank went into the hands of a receiver Hamlett demanded that the sureties named in the bond pay him the amount of the deposit, according to the tenor of their obligation. Payment was refused and an action at law was instituted on the bond. The sureties, without pleading to this action, filed a bill in equity, seeking to enjoin the prosecution of the action at law, on the ground that they had certain defenses which could be made only in a court of equity. Hamlett, as executor, filed an answer

and R. C. Blackford, S. C. Goggin and R. E. Foster, have hereto set their hands and seals this 4th day of April, 1927.

"PEOPLES NATIONAL BANK OF BROOKNEAL, INC.
"Attested: "By R. C. BLACKFORD, *President.*
"A. P. TALLEY, *Cashier.*
"(Seal of Bank).

| | |
|---|---|
| "J. E. WEBB | (Seal) |
| H. F. WALTHALL | (Seal) |
| JAS. C. GILLIAM | (Seal) |
| R. E. FOSTER | (Seal) |
| R. E. ADAMS | (Seal) |
| S. C. GOGGIN | (Seal) |
| R. C. BLACKFORD | (Seal) |
| A. P. TALLEY | |

"State of Virginia, County of Campbell, to-wit:

"I, Chapman Lash, notary public, in and for the county aforesaid in the State of Virginia, do certify that R. C. Blackford, whose name is signed to the foregoing bond as president of the Peoples National Bank of Brookneal, Virginia, Incorporated, bearing date of the 4th day of April, 1927, has acknowledged the same before me in my county aforesaid.

"Given under my hand this 4th day of April, 1927.

"CHAPMAN LASH, *Notary Public.*

"My commission expires June 9, 1929."

"State of Virginia, County of Campbell, to-wit:

"I, Chapman Lash, notary public, in and for the county and State aforesaid, do certify that J. E. Webb, R. C. Blackford, R. E. Adams, H. F. Walthall, Jas. C. Gilliam, S. C. Goggin, and R. E. Foster, whose names are signed to the foregoing bond bearing date on the 4th day of April, 1927, have acknowledged the same before me in my county aforesaid.

"Given under my hand this 6th day of April, 1927.

"CHAPMAN LASH, *Notary Public.*

"My commission expires June 9, 1929."

in the nature of a cross-bill, praying judgment on the bond. A preliminary injunction was granted complainants in this equity suit, but when the case was heard on its merits the circuit court entered a decree denying the prayer of the bill and gave judgment for the executor against the sureties on the bond for the full amount, less dividends paid by the receiver. From this decree this appeal was allowed.

The complainants in the bill, appellants here, contend that the bond is invalid, and base their contention on two grounds: (1) That while the bond was executed by them it was left with Blackford, to be delivered upon condition, which condition never arose, hence delivery to the obligee was a nullity; (2) that the bond was so incomplete on its face that there was constructive notice to the obligee of the non-performance of some condition imposed by the sureties.

It is conceded that the obligee had no knowledge of any condition or secret agreement between the co-sureties, or between the sureties and the principal obligor. The appellants further admit that they executed the bond and delivered it to Blackford, who was personally a co-surety with them, upon condition that in the event Hamlett demanded a new bond before the bank could obtain one with an indemnity company as surety, it should be delivered by Blackford to the obligee. There is testimony tending to show that the bank, principal obligor, did obtain such a bond from an agent of the Globe Indemnity Company, which bond was cancelled as soon as execution thereof was reported to the home office of the company. Both Hamlett and his daughter testified that they never heard of such a bond and no such bond was delivered to him. Even if he had received the bond executed by the insurance company, it was immediately withdrawn and cancelled and the bond involved in this suit delivered to him, without any knowledge on his part of any condition imposed by the sureties.

 It is definitely decided in Virginia, and by the better reasoned decisions in other jurisdictions, that an instrument complete upon its face cannot be avoided in the hands of the obligee where it appears he had no notice of the condition at the time he received the obligation from the co-obligor. *Nash* v. *Fugate,* 24 Gratt. (65 Va.) 202, 18 Am. Rep. 640; *Id.,* 32 Gratt. (73 Va.) 595, 34 Am. Rep. 780; *Whitaker* v. *Lane,* 128 Va. 317, 104 S. E. 252, 11 A. L. R. 1157; *Coal River Collieries* v. *Eureka Coal Co.,* 144 Va. 263, 132 S. E. 337, 46 A. L. R. 485.

In *Blair* v. *Security Bank,* 103 Va. 762, 771, 50 S. E. 262, 264, this is said: "But in case of a delivery by a co-obligor to the obligee, the validity of the condition annexed by one or more of the obligors upon delivery to the co-obligor depends upon whether the obligee has or has not notice of the condition. If he has notice, the condition is valid; otherwise, it is void."

See the following cases from other jurisdictions: *Dair* v. *U. S.,* 16 Wall. 1, 21 L. Ed. 491; *Butler* v. *U. S.,* 21 Wall. 272, 22 L. Ed. 614; *Joyce* v. *Auten,* 179 U. S. 591, 21 S. Ct. 227, 45 L. Ed. 332; *Smith* v. *Board of Supervisors,* 59 Ill. 412.

The other contention of appellants, *i. e.,* that the bond is invalid because it was never legally completed, is based upon the following grounds: (a) That it was delivered to Blackford in escrow and he never delivered it to the obligee; (b) that Blackford alone was authorized to fill in the day and month left blank; (c) that Blackford, as president never acknowledged his signature to the bond.

Appellants admit that, so far as they were concerned, the bond was complete when they delivered it to their co-obligor. No further action was necessary on their part to make the obligation binding upon each of them. They also admit that they knew Hamlett would not permit this large deposit to remain in their small bank unless the bank gave him a bond, with surety, to secure payment of the money. A. P. Talley, their own witness, who was the active officer in charge of the bank, testified that Black-

ford delivered this bond to him, with instructions to deliver it to Hamlett on request, "but to get in touch with him (Blackford) and let him know in case that happened." In 1928 Blackford resigned as president of the bank and died before the institution of this suit. The testimony of A. P. Talley on this point is uncontradicted.

Even if the intentions of the parties were as appellants contend, the delivery of the bond under the circumstances heretofore narrated is the same as delivery by Blackford himself. In other words, there is no distinction between such delivery by Talley and delivery by a co-obligor in breach of the condition imposed. Inasmuch as it is clearly shown that the obligee had no notice of any such condition or agreement between the co-obligors, his rights are not affected thereby.

(b) The only blank in the body of the bond which was not filled in before the sureties signed the same was the date; that is, the day and month. As already stated, these blanks were filled in by Talley, without the knowledge of Hamlett, before delivery. The bond would have been valid if no day and month had been supplied. 2 Min. Ins. 737; *Preston* v. *Hull,* 23 Gratt. (64 Va.) 600, 14 Am. Rep. 153; *Keen's Ex'r* v. *Monroe,* 75 Va. 424. If this was an alteration, it was an immaterial one and in no way affected the validity of the bond. See *Bashaw* v. *Wallace,* 101 Va. 733, 45 S. E. 290; *Whiting* v. *Daniel,* 1 Hen. & M. 390; *Anderson* v. *LeSueur,* 154 Va. 317, 153 S. E. 799; 2 C. J. 1247.

(c) An examination of the jurat of the officer, set out in the footnote, does not reveal the date on which Blackford acknowledged his signature before the notary. It was clearly shown by the evidence that he was not in Brookneal on the 4th day of April, 1927. He lived in Lynchburg and while president of the bank usually visited it once a week. Chapman Lash, the notary, was an employee of the bank and doubtless saw him frequently. Several witnesses stated that they did not see or hear Blackford acknowledge his signature on January 31, 1927,

the day the bond was prepared and signed by all parties. Lash was not called as a witness, and while there is other evidence tending to show that he was not as careful in performing the duties of a notary public as he should have been, we do not think the evidence is sufficient to impeach the certificate of acknowledgment of a duly authorized officer. In order to do so the proof must be clear, cogent, satisfactory, and convincing beyond reasonable controversy. *McCauley* v. *Grim,* 115 Va. 610, 79 S. E. 1041; *Roberts* v. *Huntington Development Co.,* 89 W. Va. 384, 109 S. E. 348; *Ford* v. *Ford,* 27 App. D. C. 401, 6 L. R. A. (N. S.) 442, 7 Ann. Cas. 245; 1 C. J. 896. The evidence introduced by appellants on this issue fails to meet these requirements.

A study of all the disclosed facts and circumstances shows that at the time Hamlett received the bond in question there was nothing on the face of the paper, and no fact was brought to his knowledge before he accepted the instrument, which was calculated to put him on guard or notice as to any condition imposed by, or agreement existing between, the co-sureties. All that the testimony of appellants tends to show is that at the time they executed the bond, January 31, 1927, they thought the arrangements would be temporary and the bond would be in force, if at all, only until permanent arrangements could be made for a similar bond with an indemnity company as surety. The officers of the bank failed to make such permanent arrangements with any insurance company.

Appellants concede that Hamlett knew nothing of these conditions; that he accepted in good faith the bond from A. P. Talley, the officer whom the president and appellants had selected to conduct the business of the bank, and that he relied upon the obligations therein expressed to protect him from loss in the event the bank became insolvent. The bank did become insolvent and unless the obligors on the bond fulfill their obligations the obligee will suffer loss. The facts bring this case squarely within

the principle that where one of two innocent persons must suffer loss, he shall bear it whose want of caution occasioned it. As was said by Judge Staples in *Nash* v. *Fugate, supra:*

"It would seem to be a gross violation of justice and good faith to permit the surety, under such circumstances, to repudiate these solemn declarations by setting up conditions and limitations known only to himself and his co-obligors."

For the reasons herein stated the decree of the lower court is affirmed.

*Affirmed.*