# Richmond

J. C. CROFT, ET ALS. V. JOHN CHAPMAN SNIDOW, ETC., ET ALS.

March 5, 1945.

Record No. 2884.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*T. Warren Messick,* for the appellants.

*John B. Spiers* and *W. B. Snidow,* for the appellees.

BROWNING, J., delivered the opinion of the court.

This is an attack upon the will of Mrs. Helen B. Hoge, late of Giles county, Va.

The contestants who are the appellants charged that the testatrix did not possess sufficient mental capacity to make a valid will and that the paper writing offered was not her free will and testament but was brought about by the undue influence exercised by John Chapman Snidow, one of the appellees, and the major beneficiary.

There was an issue *devisavit vel non.* At the conclusion of the evidence introduced by the proponents, the contestants demurred to the evidence. The court overruled the demurrer and decreed that the paper writing probated was the true last will and testament of Helen B. Hoge. An appeal was awarded, hence the presence of the case here. We deem it unnecessary to quote the will.

The learned Chancellor made his most excellent opinion a part of the record. It well reflects our opinion; therefore it is adopted as that of this court. It is as follows:

"On the trial before the jury the proponents introduced the clerk before whom the will was probated; the two subscribing witnesses, and one of the proponents, John Chapman Snidow, who is one of the beneficiaries, and

named as co-executor, and qualified as sole executor. The contestants introduced no evidence, but demurred to the evidence introduced by the proponents. By their demurrer they admitted the truth of all the evidence introduced by the proponents, and all the just inferences proper to be drawn therefrom. Burks P. & Pr. (2d ed.) p. 479. As stated in *Dearing* v. *Dearing*, 132 Va. 178, 181, 111 S. E. 286, 'if the evidence be such that a jury might have found a verdict for the demurree, the court must give judgment in his favor.'

"There are two grounds of demurrer, the first being that the proponents have failed to establish due and proper execution of the will, in that they failed to identify pages 1 and 2 thereof. The will was typewritten on three sheets of paper, the first two containing the property dispositions, and the third completes a paragraph begun on the second page, names the executors, carries the date, the signature of the testatrix, and the certificate and signatures of the attesting witnesses. It is fastened together by three small wire staples which also hold a manuscript cover enclosing the three pages. This manuscript cover is attached so that the name of the attorney printed on it, 'Julius Goodman, Attorney-at-law, Christiansburg, Va.,' who prepared the will, is on the inside, and the edges of the cover are somewhat worn, chiefly where it has been folded. The wire staples give no indication of having been moved since they were inserted.

"The clerk testified that the writing was by him admitted to probate on May 13, 1940, on the testimony of J. L. Dillow and James R. Stafford, subscribing witnesses, who proved the signature of Mrs. Hoge to the paper, and the due execution thereof. The writing is dated April 27, 1938, and the probate order shows that Mrs. Hoge died May 8, 1940, at the age of 79 years.

"Mr. Stafford identified his signature to the paper, and said that Mrs. Hoge either signed or acknowledged her signature in the presence of him and Mr. Dillow, all present at the same time, and that he and Dillow signed as witnesses in the presence of Mrs. Hoge and of each other. But the will was not read in his presence, and he did not know its con-

tents, and he did not know how many sheets of paper there were. The only sheet he could identify was the one bearing his signature. He did not recall the word 'will' being mentioned, but just presumed it was a will. He was vague about the circumstances, but was under the impression that Mrs. Hoge signed the paper in his presence.

"Mr. Dillow, the other subscribing witness, testified that Mrs. Hoge and John Chapman Snidow came into his office in the Court House, and Snidow said Mrs. Hoge wanted to execute her will, which, according to his recollection, Snidow took out of his inside coat pocket; that he explained that it was necessary to have another witness, and went across the hall and asked Mr. Stafford to come over and 'witness a paper for me;' that the will had been introduced in evidence was signed and acknowledged by Mrs. Hoge in the presence of him and Mr. Stafford, and he and Mr. Stafford attested the will in the presence of Mrs. Hoge. He said on cross examination that the will was not read by him, nor by Mrs. Hoge while in his office; that he did not remember how many sheets there were; that the only page he could identify was the one bearing his signature. He did not recall whether the pages were fastened together or not, or had a manuscript cover. He did not know any of the contents of the will and was not able to identify any of its provisions. On re-examination he was asked if the attestation clause did not correctly state the truth, and he said it did, and that his recollection was better when the attestation clause was signed than it is now, and that the attestation clause states the truth, otherwise he would not have signed it; that Mrs. Hoge was physically feeble; she apparently understood all that was going on, and he saw no difference between her then and any other time he ever saw her, and that he had known her ever since he began to practice law, and maybe before. The attestation clause states that the testatrix signed and acknowledged the will in the presence of the subscribing witnesses, who signed in the presence of the testatrix and of each other, at her request, and that she was then of sound mind.

"John Chapman Snidow testified that he came to Pearisburg with Mrs. Hoge, at her request, with her will to have it witnessed; that the will was signed and acknowledged by Mrs. Hoge in Mr. Dillow's office; and Mr. Dillow and Mr. Stafford signed in her presence and of each other, all being present at the same time; that the will consisted of three sheets, and were fastened together just like they are now; that the will has not been changed in any respect from the time Mrs. Hoge signed it until now.

"Contestants make the point that only by the testimony of John Chapman Snidow are the three pages of the will identified, and that his testimony required corroboration by the terms of Sec. 6209 of the Code. That section applies to a suit against one incapable of testifying. This is not a suit by the living against the dead, but between living persons, capable of testifying. But if it were otherwise, there is corroboration in the testimony of Mr. Stafford and Mr. Dillow, sufficient to make Snidow's testimony admissible, and if the jury might have believed him then the court must. He 'was not an attesting witness and could not supply deficiencies, but he could tell what was done in his presence.' *Redford* v. *Booker*, 166 Va. 561, 571, 185 S. E. 879. These statements from *Dearing* v. *Dearing*, 132 Va. 178, 182, 184-5, 111 S. E. 286, seem conclusive on this point:

" 'While it is generally true that a will cannot be established upon the uncorroborated testimony of a non-attesting witness, yet in the instant case, the will having been proven by one of the attesting witnesses, the testimony of J. Alfred Dearing, (who was draftsman, beneficiary and executor of the will) in denial of the charge that he had supplied the first sheet of the will, after it was signed by the testator, should be considered in corroboration of ·the testimony of such attesting witness, and in determining the genuineness of the will.'

" ' * * * It is true, as counsel contended, that it is possible where a will is written on separate sheets of paper, loosely fastened together, that one or more sheets might be removed and others substituted, but the possibility of this

being done is not sufficient to justify denying admission of a will to probate. \* \* \* Neither is it required that the witnesses to a will should read it or examine it with such care as to be able, upon application to admit to probate, to say that all the pages or clauses of the proposed will were the pages and clauses signed by the testator and attested by them. (Quoting from *Palmer* v. *Owen*, 229 Ill. 115, 82 N. E. 275).

" 'In Page on Wills, at section 372, the author says: "In view of the principles already laid down, it is evident that the forgetfulness of the accessible subscribing witness, as to certain necessary facts of execution, does not avoid a prima facie case made out by proof of the genuineness of the signature of the testator and the subscribing witnesses. So, where the subscribing witnesses identify their signatures, but have no recollection of having attested the instrument, or the circumstances of execution, the presumption that it was properly executed will uphold it in the absence of clear and satisfactory proof to the contrary." '

"The second ground of demurrer is that the evidence establishes a relationship between John Chapman Snidow, the principal beneficiary under the will and Mrs. Hoge, such as requires proof of the mental capacity of the testatrix and of the absence of undue influence. This position is based on the law as thus stated in *Redford* v. *Booker*, 166 Va. 561, 185 S. E. 879:

" 'We have seen that when statutory requirements of due execution are made to appear the burden rests upon the contestants to go forward with their evidence, and show, if they can, incapacity at the date of execution; but this is not true where the draftsman holds a position of trust and confidence, where he himself is a major beneficiary and where the testatrix is sick and inclined to yield readily to persuasion. In such a case not only does the burden of proof not shift but the burden of producing evidence continues likewise unchanged.'

"The evidence in the case in hand establishes some of the elements essential to the application of the above rule, but

others usually found are missing. The elements present are that John Chapman Snidow was a major beneficiary; that he had a part in the execution of the will; that for several years, as Mr. Dillow expressed it, he had attended to Mrs. Hoge's business affairs, but as stated by John Chapman Snidow, he had been helping her attend to her business for a number of years; but she attended to her business herself; that he had a key to her safety deposit box in the bank at Christiansburg, where the will was kept most of the time, and Mrs. Hoge had a key. The elements missing are an enfeebled mind yielding readily to persuasion, or unable to resist the influence of others; some facts showing dependence or domination; a mental superiority and facts or circumstances indicating an improper use, such as an unnatural or unreasonable disposition of property, or dispositions different from previously expressed intentions. The conclusion is not clear that the evidence establishes a relationship of trust and confidence such as to require the proponents to show absence of undue influence. The jury might have found it did not exist.

"But assuming that it does, the result must be the same. On demurrer, all the evidence of the proponents is taken to be true, and adverse inferences not necessarily existing are not to be taken. In this view, the evidence establishes affirmatively that the testatrix was of sound mind when she made the will; that she was 76 years old, physically feeble but attending to her own business; that for a number of years she had been a bank director and never missed a meeting; that about two weeks prior to the execution of the will she requested Snidow to have her will prepared and gave him some notes that contained the information as to the disposition of her property; that he came to Pearisburg to see Mr. Snidow, attorney, but he was sick, and then he tried to get Mr. Farrier, who was out of town. Both of these were lawyers who generally performed legal services for Mrs. Hoge. He then went to Christiansburg and had Mr. Julius Goodman prepare the will; that the will was written just as Mrs. Hoge directed in the notes given him for the

purpose of having the will prepared, and he made no suggestion as to the provisions of the will. A copy of the will was given to Mrs. Hoge and placed by her in a safe in her home in Pembroke, and after her death a copy of the will was found there. After the execution of the will Mrs. Hoge asked him to take the will and put it in the safety deposit box in the bank at Christiansburg, which he did, and he and Mrs. Hoge each had a key to the box. The will remained there for some time, and then Mrs. Hoge requested him to bring it to her at Pembroke so that she might show it to Robert Snidow, her nephew, who was there at the time, who was named as co-executor in the will, and who was a beneficiary. He brought it to her and Robert Snidow was there at the time. She kept it probably a week, and at her request he took it back to Christiansburg, put it in the safety deposit box in the bank, where it remained until after her death. After her death he brought it to Pearisburg and had it probated.

■ "In *Redford v. Booker, supra,* (p. 569) on evidence less conclusive than here, it was held that due execution had been shown, and it was there said: 'Thus upon a case like this, if all the statutory requirements for due execution be shown the legal presumption of sanity comes to the proponents' relief. A prima facie case is made out, and the burden then rests upon the contestants to produce evidence if this presumption is to be overcome.'

"On the subject of undue influence this is said: (p. 574)

" ' "Before undue influence can be made the ground for setting aside a deed, it must be sufficient to destroy free agency on the part of the grantor; it must amount to coercion—practically duress. * * * " ' '

■ " 'In short form, the rule is this: (p. 574) "Undue influence is a substitution of the dominant will for that of the ostensible actor." ' '

"Against the testimony recited above are the circumstances that Mrs. Hoge was a resident of Giles County, a stockholder in the bank at Narrows, but the will was kept in a safety box in the bank at Christiansburg, where Snidow lived, and

Snidow had a key to the box; that the will was prepared by a Christiansburg lawyer, who was a friend of Snidow's, and who made no charge for his service, and whose manuscript cover was attached to the will inside out; that when the will was executed it was produced by Snidow from his inside coat pocket, and after its execution he put it back in his pocket; that the edges of the manuscript cover were worn; that Snidow came with Mrs. Hoge to Dillow's office to execute the will, and that she was physically feeble and he was helping her along; that the notes from which the will was prepared were not produced, and Mr. Goodman, who prepared the will, was not examined as a witness.

"It is said in *Dearing* v. *Dearing, supra,* 'It is accepted as the law in all jurisdictions that forgery, undue influence and fraud in obtaining the testator's signature to a different instrument from that which he intended to sign, are offenses too grave to be lightly inferred from circumstances which are capable of innocent construction.'

"An inspection of the will shows, as stated, that the edges of the manuscript cover are worn where it is folded. Neither the pages of the will, nor the manner of its being put together, nor anything else about its physical aspects, indicates any irregularity or furnishes any ground for suspicion of its genuineness. On the evidence presented it is very unlikely that the jury would have given more weight to possible adverse inferences and conjectures than to the affirmative evidence. Certainly it cannot be said that they could not properly have found in favor of the will, and since they might, then the court must.

"The demurrer to the evidence is overruled and the verdict of the jury establishing the will subject to this ruling is confirmed."

The decree of the trial court is

*Affirmed.*