PRESENT: All the Justices

ROBERT LEE CANODY, II

                                         OPINION BY
v. Record No. 170747                  JUSTICE STEPHEN R. McCULLOUGH
                                         July 19, 2018

CHERYL A. HAMBLIN, ET AL.


FROM THE CIRCUIT COURT OF NELSON COUNTY
Michael T. Garrett, Judge


Robert Lee Canody, II, challenges the trial court's order admitting a will to probate.

More specifically, he contends that the court erred in considering testimony to establish the

testamentary nature of the pages proffered for probate and erred in failing to require the

proponent of the will to authenticate all three pages of the document. The trial court properly

admitted testimony to refute the claim that the will was fraudulent and correctly declined to

adopt a novel and more rigorous standard for admitting a will to probate. Therefore, we affirm

its judgment.

BACKGROUND

After the clerk of court refused to probate a document offered as the last will and

testament of Robert Lee Canody, his daughter, Cheryl A. Hamblin, petitioned the Circuit Court

of Nelson County to have the document probated as her father's will. *See* Code § 64.2-445. The

will consists of three computer-generated pages of the same font and font size. There are no

page numbers, and no paragraphs are split between pages. It is dated March 30, 2014. There are

staple holes that line up for all three pages. The will provides, among other things, that nothing

is to go to Canody's estranged daughter Debra Ann Canody, that all of his property and

possessions are to go to his daughter Cheryl, and that Cheryl as executor may not "extend" any

property to Canody's son Robert until he pays off the debts he owes to his father.[1] Robert opposed the probate of the document.

Testifying to the formalities of execution, April Keziah, an employee of the DuPont Community Credit Union, explained that she had come to know Canody as a customer and a friend over the past seven years. On April 1, 2014, Canody asked Keziah for the services of a notary, telling her he had a will he wanted notarized. She recalled the date, the fact that there were three pages, and that there were no initials on the pages. She was able to identify the last page of the will but she had no knowledge concerning the contents of the first two pages. Two other employees of the credit union signed as witnesses. Keziah told them they were witnessing a will. Canody signed first, then the witnesses signed. Kaziah affixed her notary seal and signature.

Andrew Moomaw, one of the witnesses, also testified. He recalled Ms. Keziah asking him to witness a will and he did so. He too could not speak to the content of the first two pages, but recognized the last page as the one he signed. The signing only took a few minutes.

Counsel for Robert raised the prospect that the first two pages of the will tendered for probate might have been substituted after the will was executed. As rebuttal to counsel's suggestion, Gene Hayden testified. Hayden was a close friend of Canody. Hayden testified that several weeks before Canody passed away, he asked Hayden to serve as executor of his estate. Hayden agreed. Canody then told Hayden about how he intended to dispose of his assets. In particular, Canody did not want his son Robert to have any money to pay for Robert's house. In

---

[1] Because Robert shares his father's name, for the sake of clarity we will refer to him as "Robert."

addition, Canody wanted his daughter to have his land and his house, as well as the house's contents. Hayden never saw Canody's actual will.

Following the hearing, counsel for Robert contended that Hayden's testimony was improperly admitted to establish the testamentary nature of a writing. In a thoughtful and thorough memorandum opinion, the trial court concluded that this testimony was admissible under the authority of *Samuel v. Hunter*, 122 Va. 636, 95 S.E. 399 (1918). The court further concluded that the will offered for probate met the statutory requirements for a valid will and that it contained the same three pages as those present at the time of execution. The trial court directed the clerk to admit the will to probate. This appeal followed.

ANALYSIS

I. THE TRIAL COURT PROPERLY ADMITTED TESTIMONY CONCERNING THE DECEDENT'S TESTAMENTARY PLAN WHEN THE GENUINENESS OF THE WILL WAS PUT INTO QUESTION.

Robert contends that the trial court improperly considered Hayden's testimony "to establish the testamentary nature of the pages proffered for probate."[2] Under settled law, "testamentary intent [must] be ascertained from the face of the paper, extrinsic evidence being not admissible either to prove or disprove it." *Payne v. Rice*, 210 Va. 514, 517, 171 S.E.2d 826, 828 (1970); s*ee also Poindexter v. Jones*, 200 Va. 372, 379, 106 S.E.2d 144, 148 (1958) ("The indicia of testamentary intent must be found in the paper itself, and evidence *aliunde* [from another source] to supply this vital and necessary characteristic is not permitted.").

---

[2] "An objection to the admissibility of evidence must be made when the evidence is presented. The objection comes too late if the objecting party remains silent during its presentation and brings the matter to the court's attention by a motion to strike made after the opposing party has rested." *Kondaurov v. Kerdasha*, 271 Va. 646, 655, 629 S.E.2d 181, 185 (2006). Robert's objection to Hayden's testimony came long after he had finished testifying. Nevertheless, the trial court addressed the merits of Robert's objection. Accordingly, we do likewise.

In *Samuel*, opponents of a will contended that it was forged. 122 Va. at 637, 95 S.E. at 399. They "offered a witness to prove certain statements of the testatrix made subsequent to the date of the alleged will." *Id.* Specifically, the party contesting the will offered to prove that the purported author of the will

> two weeks prior to her death, stated that she was going to leave her property to her heirs, or those who were near to her, and that she at that time, from the character of the language she used, could not have known of this will. Everything she said was contrary to the terms of the will at that time.

*Id.* The trial court refused to admit this testimony. *Id*. at 637-38, 95 S.E. at 399. In reversing, we reasoned "that such declarations, standing alone, are not admissible as direct evidence to prove or disprove the genuineness of the will; but that in all cases where its genuineness has been assailed by other proper evidence, the declarations are admissible as circumstances, either to strengthen or to weaken the assault, according to their inconsistency or their harmony with the existence or terms of the will." *Id.* at 638, 95 S.E. at 399. Therefore, although the proffered statements were "not admissible to prove the substantive fact of forgery," they were "admissible as showing the state of mind of the testator and his plan and intent as being consistent or inconsistent with a will, the genuineness of which is called in question by other proper evidence." *Id.* at 641, 95 S.E. at 400.

Robert raised the prospect that the first two pages of the will could have been substituted following its execution and asked the trial court to disregard them. The trial court, specifically referencing *Samuel* as its basis for considering Hayden's testimony, properly considered it to establish that the first two pages of the will were entirely consistent with Canody's stated testamentary intentions and to refute the assertion that they were not part of his original will.

4

Hayden's testimony was both relevant and admissible.  Accordingly, the trial court committed no error in admitting it and in considering it for a limited purpose.

      II.     THE WILL WAS PROPERLY AUTHENTICATED.

"In a probate proceeding the burden is on the proponent to show by a preponderance of the evidence that the purported will was written and executed in the manner prescribed by statute." *Wilroy v. Halbleib*, 214 Va. 442, 447, 201 S.E.2d 598, 602 (1974).  The party alleging fraud bears the burden of proving it.  *See, e.g., Murdock v. Nelms*, 212 Va. 639, 642, 186 S.E.2d 46, 49 (1972) (party attacking an acknowledgement as fraudulent); *Martin v. Williams*, 194 Va. 437, 445, 73 S.E.2d 355, 359-60 (1952) (party challenging a real estate conveyance).[3]

Robert argues that the trial court erred by failing to require Hamblin, as the proponent of the will, to authenticate all three pages of the will.  He notes that the witnesses could not identify the first two sheets of the will and points out that Canody did not number the pages or attach them, and neither did he initial each page.  None of the paragraphs carry over to the following page.  The formatting, Robert argues, "makes it easy for someone using the same computer on a separate day to alter what may have been on the other two sheets of paper."  He asks us to "adopt a rule that the proponent of the will must show no alterations or changes either before or after execution."  He points to the availability of computers, which can "duplicate pages with changes from an original will with no detection."  Consequently, he urges us to require "additional

---

[3] As a refinement of this general principle, we have held that the existence of suspicious circumstances "place a burden upon the proponents of a will to make a satisfactory explanation." *Barnes v. Bess*, 171 Va. 1, 8, 197 S.E. 403, 405 (1938) (noting that the will contained a number of arresting irregularities on its face and that the drafter of the will who was a stranger to the testator suspiciously was made a substantial beneficiary of the will).  Such suspicious circumstances are not present here.

safeguards, such as page numbers, initials, and dates of each page, or metadata on the final document."

We previously rejected similar arguments in *Croft v. Snidow*, 183 Va. 649, 33 S.E.2d 208 (1945).  In that case, the person challenging the will argued that the proponents of the will failed to identify the first two pages of a three-page will.  *Id.* at 652, 33 S.E.2d at 210.  As in this case, the witnesses could only identify their signature and could not recall any details about the first two pages.  *Id.* at 652-53, 33 S.E.2d at 210.  We observed that there is no requirement in the law for the witnesses to "read [the will] or examine it with such care as to be able, upon application to admit to probate, to say that all the pages or clauses of the proposed will were the pages and clauses signed by the testator and attested by them."  *Id.* at 655, 33 S.E.2d at 211.  We noted that

> the forgetfulness of the accessible subscribing witness, as to certain necessary facts of execution, does not avoid a prima facie case made out by proof of the genuineness of the signature of the testator and the subscribing witnesses.  So, where the subscribing witnesses identify their signatures, but have no recollection of having attested the instrument, or the circumstances of execution, the presumption that it was properly executed will uphold it in the absence of clear and satisfactory proof to the contrary.

*Id.* (quoting William H. Page, A Concise Treatise on the Law of Wills § 372 (1901)).  *See also Redford v. Booker*, 166 Va. 561, 571-72, 185 S.E. 879, 884 (1936) ("The failure of [the witnesses] to acquaint themselves with the contents of the document which they were witnessing does not make it void.").  We acknowledged the possibility that "one or more sheets might be removed and others substituted," but concluded that this possibility "is not sufficient to justify denying admission of a will to probate."  *Croft*, 183 Va. at 654-55, 33 S.E.2d at 211.

It is true, as Robert points out, that computers make forgery and substitution of pages easier than when a will was written by hand or even on a typewriter.  We conclude, however, that just because computers make forgery easier does not mean we should revisit settled case

6

law.  Fraud and forgery are relatively rare.  Imposing heightened requirements for submitting a will to probate, based on the outlier possibility of forgery, would thwart the salutary simplicity found in our statutory scheme.  This simplicity facilitates the ability of property owners to devise their estate by means of a will.  As we observed in *Savage v. Bowen*, 103 Va. 540, 546, 49 S.E. 668, 669-70 (1905):

> The purpose of the statutory requirements with respect to the execution of wills [is] to throw every safeguard deemed necessary around a testator while in the performance of this important act, and to prevent the probate of a fraudulent and supposititious will instead of the real one. . . .  It is, however, quite as important that these statutory requirements should not be supplemented by the courts with others that might tend to increase the difficulty of the transaction to such an extent as to practically destroy the right of the uninformed layman to dispose of his property by will.

We adhere to our existing case law, which requires the proponent of a will to prove compliance with statutory requirements for the execution of a will, and, once that has been done, places on the challenger of a will the burden of proving fraud.

Robert's evidence established, at most, the opportunity for fraud due to the lack of initials on each page, the absence of page numbers, the fact that paragraphs did not carry over on successive pages, and the unfamiliarity of the witnesses with the contents of the first two pages of the will.  He never came close, however, to establishing that the will actually was fraudulent. As the trial court trenchantly but accurately observed, "[o]ther than pure supposition, there is not one shred of evidence to support the argument that a page or pages have been substituted."  To the contrary, the evidence offered to refute the fraud claim showed that the will tendered for probate was consistent with the expressed wishes of the testator.  Fraud "must be proved; and, in the absence of proof, the court will not imagine that fraud may possibly have been practised, and act upon that imagination.  Such a course would convert the law which was meant as a shield,

7

into a sword, and destroy twenty good and fair wills for one that was fraudulent." *Boyd v. Cook*, 30 Va. (3 Leigh) 32, 50 (1831).[4]

## CONCLUSION

We will affirm the judgment of the trial court.

*Affirmed*.

---

[4] Robert advances a number of additional arguments in his brief. We have considered these arguments but do not address them, either because they fall outside the scope of the assignments of error or because they were not offered at trial. *See Lawlor v. Commonwealth*, 285 Va. 187, 259, 738 S.E.2d 847, 888 (2013) and Rule 5:25.